612

[No. 37203.    Department One.    February 4, 1965.]

WESTERN PROPERTIES, INC., et al., Appellants, v. FRANKLIN BARKSDALE et al., Respondents.*

Lawrence K. McDonell (of Regal & McDonell), for appellants.

Lewis S. Armstrong (of Caley & Armstrong), for respondents.

HALE, J.—Franklin Barksdale and Erma, his wife, president and secretary-treasurer, respectively, of two corporations, voted Franklin a $12,000 bonus from each company. Plaintiffs, owning 75 per cent of the common stock, greeted this largess with marked unenthusiasm, and want the money returned with interest. They bring this action to recover judgment of $24,000; the Barksdales counterclaim for $300,000, alleging all manner of corporate intrigue and oppression. The trial judge left the parties about where

*Reported in 399 P. (2d) 16.

they were when they entered his court by dismissing both the claim and counterclaim.

Western Properties, Inc., and Super Save Stations, Inc., the two corporations involved, were organized during 1949 and 1950. Super Save intended to operate several service stations and to sell gasoline, petroleum products and other items connected with the retail business, while Western was to lease the real estate to Super Save for its stations. Super Save, under this arrangement, paid Western, the owner of the real estate, a regular rental plus a gallonage rental. All funds with which the two corporations commenced business came from the Time Oil Company Employees' Trust Fund, on a loan that was later repaid in full with interest. R. B. Abendroth and C. Edward Miller owned or controlled more than 75 per cent of the stock of Time Oil Company, and the three, Time Oil, Abendroth and Miller, owned over 75 per cent of the common stock of U. S. Oil & Refining Company.

Miller and Abendroth, the controlling owners of Western and Super Save, put Barksdale in complete charge of these two companies. They placed all of the outstanding stock shares in both companies in Barksdale's name on the company books and simultaneously took from him stock certificates endorsed by him in blank representing 75 per cent of the stock in each corporation. To insure Miller's and Abendroth's control of both companies, Barksdale also executed his proxy to them entitling them to vote their shares. Neither Miller nor Abendroth transferred his stock on to the stock records of either company nor exercised his proxy. Thus, under the corporate bylaws prepared by Miller, Barksdale and his wife, with only 25 per cent ownership of the stock, had immediate control and direction of the two companies; Miller and Abendroth, owning 75 per cent, had ultimate control and final veto, with power to take over immediate control and direction at any time.

From 1949 until early 1962, Franklin Barksdale served as president and director of each company and his wife, with unimportant exceptions, as secretary-treasurer and director. One additional director, the vice president, com-

pleted the three-member board. The directors fixed all salaries, paid bonuses and operated the two corporations with Franklin Barksdale acting as manager.

Western Properties, as landlord, had rental income from Super Save running between $28,000 and $30,000 per year. It paid neither salary nor bonus to Barksdale, its manager and president. Super Save Stations, Inc.—referring now to the period of critical events—did a dollar volume of $1,372,000 in 1960 and $893,000 in 1961. It operated nine service stations and paid Barksdale a salary of $12,000 per year, together with annual bonuses which never exceeded $2,500 for any one year. He was allowed vacations with pay and several trips. Other bonuses had been paid to the company executives and personnel by virtue of a formula bonus plan adopted in 1952. All salaries and bonuses were set forth in the directors' minutes, copies of which were regularly sent to Abendroth and Miller. Thus, they received full reports on corporate activities and had access to all business records.

Barksdale, as operator-manager of Super Save, had no choice as to where he would purchase gasoline and other petroleum and service station products. Even before Super Save had been organized, he had agreed with Abendroth and Miller that, as manager of the company to be founded, he would buy from sources directed by them. After 1954, practically all of Super Save's gasoline and station supplies for the company's stations in Western Washington and Yakima and 75 per cent of all supplies for Spokane were, at the directions of Miller and Abendroth, purchased from Time Oil. Time Oil, under this arrangement, charged Super Save higher prices than it charged to other accounts of similar classification. This undoubtedly contributed to losses experienced by Super Save. Time Oil, at direction of Miller, rebated $15,000 in 1958 to Super Save and $48,-466.65 in 1961 to adjust the latter's profit and loss statement.

In 1961, Miller and Abendroth promised that, even though Super Save must continue to purchase its supplies from Time Oil, they would see to it that Super Save suffered no

actual loss. By December, 1961, Barksdale felt certain that this promise would not be fulfilled and called a meeting of the directors and stockholders of record in Western Properties and Super Save on December 15, 1961.

No notice of this meeting was given to either Abendroth or Miller. All stockholders of record, and the three directors in each company, were present; each waived notice of the meeting. Representing all of the stock of record and acting unanimously, the directors voted Franklin Barksdale a $12,000 bonus from each company. the minutes reflecting the action said:

"By unanimous consent of the Board of Directors, it was agreed that a special bonus of one month's salary for each year of service be paid to Franklin Barksdale, President of Super Save Stations, Inc., for his long and diligent service to the interests of the corporation. Mr. Barksdale having been President and Chief Executive Officer of the corporation for twelve (12) full years is voted a bonus of $12,-000.00."

Miller and Abendroth, the other plaintiffs being nominal, attack the bonus on several grounds. They cite *Tefft v. Schaefer,* 136 Wash. 302, 239 Pac. 837, 1119, as authority for the principle that corporate officers may not increase their own compensation by their own votes without the acquiescence or ratification of a majority of the stockholders, and also refer us to *Standard Furniture Co. v. Hotel Butler Co.,* 161 Wash. 109, 296 Pac. 153; *von Herberg v. von Herberg,* 6 Wn. (2d) 100, 106 P. (2d) 737; *Wonderful Group Mining Co. v Rand,* 111 Wash. 557, 191 Pac. 631.

Plaintiffs likewise claim that the bonuses constitute a breach of fiduciary duty, citing RCW 23.01.360, which reads:

"Officers and directors shall be deemed to stand in a fiduciary relation to the corporation, and shall discharge the duties of their respective positions in good faith, and with that diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions."

We have consistently upheld this statute, and applied it so as to hold directors and corporate officers to the highest standards of fiduciary conduct, thus enjoining upon them

the duty to always act in the utmost good faith. *Kane v. Klos,* 50 Wn. (2d) 778, 314 P. (2d) 672; *Arneman v. Arneman,* 43 Wn. (2d) 787, 264 P. (2d) 256, 45 A.L.R. (2d) 370; *Morrison v. Nelson,* 38 Wn. (2d) 649, 231 P. (2d) 335, to cite but a few of our statements on the subject.

But we are hard put to find evidence here of any breach of faith or conduct which ought be declared a breach of fiduciary duty or trust by Franklin Barksdale and the other two directors. The trial court, after hearing all of the evidence submitted in support of and in opposition to the defendants' counterclaim—which it dismissed—and all of the evidence in support of and in opposition to the plaintiffs' claim to recover judgment of $24,000 on account of the bonus—which it likewise dismissed—made the following finding of fact:

"The salaries paid to Franklin Barksdale over the years by Super Save Stations, Inc., were extremely nominal considering the size of the company and nature and volume of the business, and the court finds that the 1961 bonus voted on December 15, 1961, was neither unjust, inequitable nor unreasonable." Finding of fact No. 11.

Appellants' sole claim of error in the cause and the only grounds asserted for reversal on this appeal is the making of this finding.

Granting the validity of appellants' argument that the foregoing finding sets forth observations in the nature of a conclusion of law, we note also that it sets forth several findings of ultimate fact. Putting a construction most favorable to appellants' position on finding No. 11, we would have to view it as a mixed finding of fact and conclusion of law, and one necessarily to be considered in connection with the other findings. The other findings of fact—to which appellants assign no error—seem specific and detailed and apparently rest on adequate evidence, and must be deemed verities. This narrows our review to determine whether finding No. 11, treating it as a mixed finding and conclusion, is supported by substantial evidence.

Appellants, in challenging finding No. 11, have sent up a limited factual record. It consists of a short statement of

facts containing only the testimony given by Franklin Barksdale, called by them as an adverse witness, and that of William Ward, former vice president of Super Save and Western Properties, who had voted for the latter company's bonus by signing the minutes of its December 15, 1961, meeting. Some documentary exhibits and this testimony, augmented by plaintiffs' formal admissions made in response to formal requests therefor, comprise the entire record of the facts brought before us for review. The admissions contained, among other things, detailed statements showing Abendroth's and Miller's control of Time Oil Company and U. S. Oil & Refining Company, and a volume of sales from Time Oil to Super Save during 1957 to 1961 totaling nearly $4,000,000.

This evidence likewise included proof of the total managerial efforts put forth by Barksdale in operating Super Save and Western Properties for 11 years under virtual carte blanche authority from appellants, an authority that granted him complete legal power to fix all salaries and bonuses and to actively manage the two companies excepting only the authority to choose their sources of supply. The court also had before it evidence that appellants never exercised their powers to vote their stock or in any way curtail Barksdale's authority, save to require him to purchase petroleum commodities for resale at their direction and price. And from the facts adduced at the trial, the trial court had before it substantial evidence considered in pari materia with all other findings to support the controverted finding No. 11 that, over the years, Barksdale had paid himself an extremely nominal salary in relation to the work performed and responsibilities discharged and that the bonus, placed in the same light, was neither unjust, inequitable nor unreasonable.

To upset finding No. 11, appellants must do more than point out that the bonuses were by far the highest bonus ever voted, or were suddenly and unexpectedly allowed. The amount and the suddenness alone, without more, do not confirm appellants' assertion that the bonuses were inequitable or derived through a breach of trust. In weigh-

ing the evidence, the trial court had the latitude to view the bonuses in the light of all the dealings among the parties and in connection with the history of the two companies. We must then accept finding No. 11 because it appears to be supported by substantial evidence. Where findings are amply sustained by the proofs, even though this court might have resolved the disputed facts differently, we will not disturb them. *Adler v. University Boat Mart, Inc.*, 63 Wn. (2d) 334, 387 P. (2d) 509.

No assignment of error having been directed against any findings of fact except No. 11, the judgment is affirmed.

DONWORTH, OTT, and HUNTER, JJ., concur.

HILL, J. (dissenting)—We are not here concerned with the volume of business transacted by the two companies involved, or the value of the services rendered by the defendant Franklin Barksdale. The fact is that a disgruntled officer and minority stockholder took advantage of the confidence placed in him by the actual owners of three-fourths of the stock of the companies and voted himself two $12,000 bonuses without their knowledge or approval. This is not just a little corporate chicanery. To permit Barksdale to retain these bonuses is legalized larceny. I dissent.

March 29, 1965. Petition for rehearing denied.