189 P.3d 168 (2008)
Eli RODRIGUEZ, individually, and on behalf of others similarly situated, Appellant,
v.
LOUDEYE CORP., Michael A. Brochu, Jason S. Berman, Kurt R. Krauss, Johan C. Liedgren and Frank A. Varasano, Respondents, and
Nokia, Inc., and Loretta Acquisition Corporation, Defendants.
No. 59932-1-I.
Court of Appeals of Washington, Division 1.
April 7, 2008.
Publication Ordered June 3, 2008.
*170 Clifford A. Cantor, Law Offices of Clifford A. Cantor, Sammamish, WA, Karen T. Rogers, Michiyo M. Furukawa, Milberg Weiss LLP, Los Angeles, CA, for Appellant.
Daniel J. Dunne, Charles J. Ha, Leonard J. Feldman, Christopher Lanese, Heller Ehrman LLP, Seattle, WA, for Respondents.
AGID, J.
¶ 1 Shareholders of Loudeye Corp. ("Loudeye"), a Delaware corporation, appeal the trial court's order dismissing their complaint against Loudeye directors alleging breach of their fiduciary duties in conducting a merger with Nokia Corp. ("Nokia"). The shareholders assert the trial court improperly considered an exculpatory provision in Loudeye's charter that bars any claims for damages against its directors for breach of the duty of due care and that the complaint sufficiently alleges that the directors breached their fiduciary duties of care, loyalty and good faith. But Delaware law permits a trial court to dismiss on a CR 12(b)(6) motion claims for breach of the duty of care based on exculpatory provisions in a corporate charter, and the complaint fails to allege sufficient facts to support a claim for breach of the duty of loyalty or good faith. We therefore affirm.

FACTS
¶ 2 Loudeye is a company that provided media content, mostly digital music, for use in cell phones and consumer electronics. In June 2004, Loudeye acquired OD2, a European based provider of digital media store services. In July 2004, Loudeye began collaborating with Nokia about music services offered by OD2. By November 2005, Loudeye and Nokia had entered into a non-disclosure agreement in "`contemplation of [Loudeye] sharing confidential information with Nokia outside the scope of Loudeye and Nokia's [then] existing commercial relationship.'"[1]
*171 ¶ 3 Loudeye's directors also hired an investment banking firm, Allen and Company LLC ("Allen & Co."), to help them identify strategic partners willing to acquire or merge with Loudeye. According to Loudeye's proxy statement, Allen & Co. was retained because "despite management's cost containment efforts, the revenue generated by Loudeye's two digital store platforms was insufficient to maintain both [the American and European digital music] platforms on a long term basis." The proxy statement notes that in February 2006, two of Loudeye's major United States customers terminated their relationship with Loudeye.[2]
¶ 4 Working with Allen & Co., Loudeye then contacted at least 72 potential suitors to solicit interest in a merger or acquisition and held discussions with 26 of these suitors, three of whom ultimately made offers. In May 2006, Loudeye representatives went to London to make due diligence presentations to Nokia about Loudeye's European business. At the same time, Loudeye representatives conducted due diligence meetings in London and Bristol, U.K., about a potential merger with another company.
¶ 5 On June 22, 2006, Nokia made an offer to acquire Loudeye in a cash merger at $4.50 per share, subject to certain conditions including an exclusivity agreement. On the date of the offer the closing price of Loudeye's stock was $1.66 per share. On June 26, 2006, Loudeye counter-offered for $5.00 per share, but Nokia refused the counter offer. Two other companies then submitted offers for prices significantly lower than Nokia's offer. On August 7, 2006, management presented to Loudeye's board of directors a definitive merger agreement with Nokia and the board unanimously voted to approve and recommend it to the stockholders.
¶ 6 On October 6, before the vote was put to the shareholders, Eli Rodriguez filed this class action lawsuit on behalf of Loudeye shareholders, suing five members of Loudeye's board of directors. The complaint alleged that the directors breached their fiduciary duties by failing to auction, failing to adequately disclose information about other potential offers, and failing to obtain the best price. The complaint also alleged that the board had conflicts of interest, citing a termination agreement entitling CEO Michael Brochu to $325,000 if he was terminated without cause on or following the date of the merger. The complaint further alleged that "other control people at Loudeye receive[d] lucrative employment or retention packages" and "other perks, such as accelerated vesting of Loudeye stock options." The complaint then sought relief as follows:
preliminary and permanent injunctive and declaratory relief preventing the Defendants from inequitably and unlawfully depriving Plaintiff and the Class of their right to realize the full market value for their stock, by unlawfully entrenching themselves in their positions of control, and to compel the Defendants to carry out their fiduciary duties to maximize shareholder value.
¶ 17 On October 11, 2006, the stockholders voted on the merger and 90 percent of them voted in favor of the merger. The transaction closed on October 16, 2006. The shareholder class did not make any motions or take any action to enjoin the shareholder vote or the merger closing. On February 21, 2007, defendant directors moved to dismiss the complaint for failure to state a claim and the trial court granted the motion.

I. CR 12(b)(6) Dismissal

¶ 8 The shareholders argue that the trial court erred by dismissing their complaint because (1) the court improperly considered a Section 102(b)(7) exculpatory provision on a CR 12(b)(6) motion to dismiss and (2) the complaint contains sufficient allegations to establish that the directors breached their fiduciary duties. We review a trial court's ruling granting a CR 12(b)(6) motion to dismiss de novo.[3] CR 12(b)(6) provides for dismissal of a complaint if it fails to state *172 a claim upon which relief can be granted.[4] Dismissal is warranted only if the court concludes, beyond a reasonable doubt, the plaintiff cannot prove any set of facts which would justify recovery.[5] All facts alleged in the plaintiff's complaint are presumed true.[6] But the court is not required to accept the complaint's legal conclusions as true.[7]

A. Effect of Section 102(b)(7) Exculpatory Provision

¶ 9 The shareholders first contend the trial court improperly considered an exculpatory provision in Loudeye's certificate of incorporation that bars any claims against its directors for breach of the duty of care. They contend that under Washington procedure, such a provision cannot support a CR 12(b)(6) motion to dismiss. We disagree.
¶ 10 Shareholder claims involving a corporation's internal affairs are governed by the law of the state in which the corporation was incorporated.[8] Thus, the parties agree that because Loudeye is a Delaware corporation, Delaware law applies here. Under Delaware law, the business judgment rule protects a corporate director's business decisions against shareholder lawsuits.[9] This rule protects directors from liability for decisions that "can be attributed to any rational business purpose,"[10] and creates a presumption that "the Board acted independently, with due care, in good faith and in the honest belief that its actions were in the stockholders' best interests."[11] Thus, to bring a claim against a corporate director, a shareholder must allege sufficient facts to overcome this presumption.[12] Those facts must show that the board of directors, in reaching its challenged decision, breached any of its three primary fiduciary duties.
¶ 11 The three primary fiduciary duties of directors of Delaware corporations are due care, loyalty, and good faith.[13] The Delaware code authorizes Delaware corporations to immunize directors from liability for damages arising out of breaches of their fiduciary duties.[14] Under Section 102(b)(7), a corporation may include a provision in its certificate of incorporation that eliminates a director's personal liability for breach of the duty of care, but not for breach of the duties of loyalty and good faith.[15]
¶ 12 In conducting a sale of corporate control, a director's duty is to seek out the best value reasonably available to the stockholders.[16] Failure to do so may amount to a breach of the directors' fiduciary duties if it is "the result of illicit motivation (bad faith), personal interest divergent from shareholder interest (disloyalty) or a lack of due care."[17] But if a complaint merely alleges that the directors were grossly negligent in performing their duties in selling the corporation, without some factual basis to suspect *173 their motivations, any finding of liability will necessarily be based on breaches of the duty of care, not loyalty or good faith.[18] And in such cases, a Section 102(b)(7) provision will bar any for claim for damages.[19]
¶ 13 The shareholders argue that the trial court improperly considered the Section 102(b)(7) provision because it is an affirmative defense and under Washington procedure cannot support a CR 12(b)(6) motion to dismiss. While they acknowledge that Delaware law allows the provision to bar a claim for breach of the duty of care on a CR 12(b)(6) motion, they assert that this is a matter of Delaware procedure which is not recognized in Washington. They note that while Delaware substantive law applies here, procedure is determined by Washington law. And, without citation to any supporting Washington authority, they assert that Section 102(b)(7) director immunity cannot defeat their claims of breach of fiduciary duties on a CR 12(b)(6) motion to dismiss because it must be proved as an affirmative defense. We disagree.
¶ 14 The shareholders mischaracterize the role of a Section 102(b)(7) provision in a motion to dismiss as purely procedural. They rely on language in the Delaware court's opinion in Emerald Partners v. Berlin discussing the business judgment rule where the court noted that the rule is both "a procedural guide for litigants and ... a substantive rule of law."[20] The court explained that it is a procedural guide because it places the initial burden of proof on the plaintiff, and if the plaintiff fails to meet this evidentiary burden, it operates to provide substantive protection for directors and their decisions.[21] The court then concluded that a corporation's adoption of a charter provision in accordance with Section 102(b)(7) bars a shareholder from recovering monetary damages from directors based upon a violation of the duty of care,[22] and noted that it may be raised on a CR 12(b)(6) motion to dismiss.[23] Thus, the court did not characterize it as a procedural bar as the shareholders suggest; rather it was applied to defeat a substantive claim that the directors breached the duty of care. The same analysis applies here. To the extent the complaint in this case alleges breach of the duty of care, it must be dismissed unless it alleges facts sufficient to state a claim for breach of the duties of loyalty or good faith.[24]
¶ 15 Here, the conduct challenged in the complaint is the directors' failures to auction, to adequately disclose information about other potential offers, and to obtain the best price and their conflicts of interest based on their employment or retention packages and accelerated vesting of Loudeye stock options. But to the extent these allegations describe gross negligence in the sale of the corporation, their conduct amounts only to a breach of due care, which is not actionable under Section 102(b)(7).[25] Thus, only if there are allegations establishing a breach of the duties of loyalty or good faith can the complaint survive a motion a dismiss.

B. Allegations of Loyalty and Good Faith Violations

¶ 16 The shareholders do not point to the allegations that support a claim for breaches of the specific duties of loyalty and good faith, but assert generally that the directors breached all three fiduciary obligations by failing to auction for the best price and disclose adequate details of the negotiations with potential suitor companies, and by benefiting *174 personally from employment or retention packages and accelerated stock vesting. They argue that the duties to disclose and maximize shareholder value implicate all three fiduciary duties of due care, loyalty, and good faith and assert that their allegations that the directors failed to do so establish a breach of all three duties. They further contend that the alleged conflicts of interest establish a breach of the duty of loyalty. We disagree.
¶ 17 To establish a breach of the duty of good faith, the shareholders must show that the director's conduct is motivated by an actual intent to do harm, or occurs when directors "consciously and intentionally disregard their responsibilities,"[26] and is conduct "so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith."[27]
¶ 18 "[T]he duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director ... and not shared by the stockholders generally."[28] To plead a breach of the duty of loyalty, the shareholder must allege facts sufficient to show that a majority of the directors who approved the conduct or transaction were materially interested in the transaction.[29] A director is materially interested in a transaction if the director's interest is "of a sufficiently material importance, in the context of the director's economic circumstances, as to have made it improbable that the director could perform her fiduciary duties to the ... shareholders without being influenced by her overriding personal interest."[30]
¶ 19 To plead actionable disloyalty in a case involving a merger with a genuine third-party acquirer, the plaintiff must show that the materially self-interested board members either: (1) constituted a majority of the board, (2) controlled and dominated the board as a whole, or (3) failed to disclose their interests in the transaction to the board, and a reasonable board member would have regarded the existence of their material interests as a significant fact in the evaluation of the proposed transaction.[31] "Absent such a showing, the mere presence of a conflicted director or an act of disloyalty by a director, does not deprive the board of the business judgment rule's presumption of loyalty."[32] For example, the court held in In re Lukens Inc. S'holders Litig. that there was no basis for a claim that the board as a whole lacked independence.[33] There the chief executive officer (CEO) was to receive a $20 million "golden parachute" payment as a result of a sales transaction, but there was no allegation that the CEO dominated or controlled the board.[34]
¶ 20 While breach of the duties to disclose and maximize value arise from all three primary fiduciary duties of due care, loyalty, and good faith, a breach of the duty to disclose and maximize value does not necessarily constitute a breach of all three fiduciary duties, as the shareholders suggest. In McMillan v. Intercargo Corp., the court dismissed *175 similar claims based on nondisclosure and failure to maximize value when there were no allegations to support a claim for breach of the duty of loyalty or good faith and a Section 102(b)(7) provision barred any due care claims.[35] Finding no support for a breach of loyalty claim, the court noted there was no allegation that the board refused to consider a higher bid or that the provisions of the merger agreement prevented a bidder from presenting a superior offer during the time between the announcement of the merger and its consummation.[36] The court also concluded that there was no basis for a bad faith claim because there were no facts pled in the complaint to buttress the conclusory bad faith accusation, noting that "[t]he complaint does not even come close to alleging disclosure omissions or any other conduct `so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith.'"[37]
¶ 21 Likewise here, there were no allegations of superior offers or that the nondisclosure agreement in fact prevented a bidder from presenting a superior offer. Nor were there allegations of any conduct "`so far beyond the bounds of reasonable judgment'" that it had to be attributable to bad faith. Thus, neither the duty of loyalty nor the duty of good faith is implicated by the complaint's allegations of failure to disclose or failure to maximize value.
¶ 22 The only allegations implicating the duty of loyalty are that Loudeye CEO Brochu would receive a $325,000 severance package if terminated without cause following the merger, that Loudeye's chief financial officers and head of Loudeye's European operations would receive "similar golden parachutes," and that Loudeye directors' stock option vesting was accelerated as a result of the merger. But the existence of such severance packages alone does necessarily not present a conflict that would prevent the director from seeking the highest value for its shareholders. As in Lukens, the complaint alleges no facts establishing that Brochu dominated and controlled or misled the board.
¶ 23 The shareholders contend that the complaint establishes that Brochu dominated the board because he failed to bring an unsolicited offer to the board for consideration. But the complaint does not establish that Brochu failed to bring this offer to the board as the shareholders suggest; it simply states that the proxy statement does not disclose whether or not the board considered it.[38] Nor does the complaint allege any facts about Brochu's relationship with the other board members or that demonstrate that they were "beholden" to him.[39] Additionally, as the directors note, there was no allegation that this severance package would apply only in the event of the Nokia merger. Thus, the allegations fail to establish that the severance package caused Brochu to prefer Nokia over other potential acquiring companies or that he otherwise breached the duty of loyalty.
¶ 24 Nor does the accelerated vesting of the stock options amount to an adverse or impermissible interest in the merger. Rather, as the directors note, the accelerated vesting establishes that the directors' interests are actually aligned with the shareholders because they are both interested in maximizing the value of their shares.[40] Finally, as the directors point out, the situation that typically implicates disloyalty is when the directors in the acquired corporation also have interests in the acquiring corporation or when directors seek to entrench themselves in their positions of control.[41] But neither situation is present here. The complaint *176 therefore fails to state a claim for breach of the duty of loyalty or good faith.

II. Trial Court's Consideration of Facts Outside of the Complaint

¶ 25 The shareholders also contend that the trial court improperly considered facts outside of the complaint. Generally, in ruling on a CR 12(b)(6) motion to dismiss, the trial court may only consider the allegations contained in the complaint and may not go beyond the face of the pleadings.[42] But the trial court may take judicial notice of public documents if their authenticity cannot be reasonably disputed in ruling on a motion to dismiss.[43] ER 201(b) authorizes the court to take judicial notice of a fact that is "not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Documents whose contents are alleged in a complaint but which are not physically attached to the pleading may also be considered in ruling on a CR 12(b)(6) motion to dismiss.[44]
¶ 26 The shareholders first assert that the trial court improperly considered the proxy statement relied on by the directors because it was outside the pleadings. But because the proxy statement was referenced in the complaint, it was not actually outside the pleadings and was properly considered by the trial court. The shareholders also challenge, as a matter outside the pleadings, the trial court's consideration of the Section 102(b)(7) exculpatory provision in Loudeye's certificate of incorporation. But as the directors correctly assert, this was properly a subject of judicial notice because it was a matter of public record, "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned,"[45] i.e., an inquiry to the Delaware Secretary of State's office would reveal that Loudeye's certificate of incorporation contained a Section 102(b)(7) provision.
¶ 27 Indeed Delaware courts have properly considered such provisions in ruling on similar motions to dismiss. In McMillan, the court took judicial notice of a similar exculpatory charter provision in resolving a motion addressed to the pleadings.[46] And in Malpiede v. Townson, the Delaware court concluded that the trial court's consideration of a Section 102(b)(7) provision contained in a company's certificate of incorporation did not amount to reversible error.[47] As the court explained:
When the issue is confined to the legal effect of a Section 102(b)(7) charter provision, it is difficult to envision what discovery would be implicated. To be sure, in a due care case where a Section 102(b)(7) charter provision is invoked, a plaintiff could theoretically contest the validity of the charter provision. In such a case, the plaintiff must have a proper basis to claim that the Section 102(b)(7) charter provision presented by the defendants on the Rule 12(b)(6) motion is not authentic, was improperly adopted by the stockholders, or *177 the like.[[48]]
There, the plaintiffs did not contest the existence or authenticity of the Section 102(b)(7) charter provision and the court concluded that they "were not deprived of any important procedural right arising from the fact that the trial court considered [defendant company's] 102(b)(7) charter exculpation provision" on a motion to dismiss.[49]
¶ 28 Similarly here, the shareholders did not contest the existence or authenticity of the Section 102(b)(7) provision. While they assert for the first time on appeal that the certificate of incorporation may not have contained this provision at times relevant to this action, we will not consider arguments not first raised below.[50] Thus, as in Malpiede, the trial court's consideration of the Section 102(b)(7) provision did not deprive the shareholders of any substantive right and does not amount to reversible error.
¶ 29 The directors also contend that the Form 8-K SEC filings were properly considered by the court because they were also subject to judicial notice. We agree. The shareholders did not contest their existence or their accuracy in the trial court and now waive such challenges on appeal. Thus, these facts were properly subject to judicial notice because they could be readily verified by accurate sources (the Securities and Exchange Commission and the Delaware Secretary of State).
¶ 30 Finally, the shareholders contend that the trial court improperly considered the directors' submission of evidence of three competing offers to acquire Loudeye for prices that were substantially lower than Nokia's offer. The directors assert that because they were submitted in direct reply to the shareholders' allegations that the directors refused to disclose competing offers, the shareholders were barred by the invited error doctrine from challenging the court's consideration of them. We disagree.
¶ 31 The invited error cases cited by the directors do not address CR 12(b)(6) motions, and nothing in those cases suggests that the invited error doctrine applies in this context. Rather, they involve challenges to jury instructions by the party who proposed them which do not apply here.[51] Evidence of the three competing offers presented by the directors involved matters outside of the pleadings, and the trial court improperly considered them in ruling on the CR 12(b)(6) motion to dismiss. But because the facts that were properly before the court did not establish any actionable breaches of fiduciary duties, the trial court's consideration of these facts was harmless error. Even without the evidence of the offers, the complaint failed to state a claim and dismissal was proper.

III. Denial of Leave To Amend

¶ 32 Finally, the shareholders challenge the trial court's denial of leave to amend the complaint. A trial court's decision to deny leave to amend is reviewed for an abuse of discretion.[52] After an answer is served, CR 15(a) permits a plaintiff to amend a complaint only by leave of court, which shall be freely given when justice so requires. CR 15(a) further requires that a party moving to amend a pleading shall attach to the motion a copy of the proposed amended pleading, denominated "proposed" and unsigned. Denying a motion for leave to amend is not an abuse of discretion if the proposed amendment is futile.[53] But the trial court's failure to explain its reason for denying leave to amend may amount to an abuse of discretion.[54]
*178 ¶ 33 The directors contend that because the shareholders failed to comply with the requirements for filing a motion for leave to amend, the motion was not properly before the trial court and there is nothing for this court to review. They note that the shareholders neither attached a proposed amended complaint nor explained how an amendment would correct the defects in the complaint. But the case upon which they rely, Washington Co-op. Chick Ass'n v. Jacobs, involved a complete failure to request leave to amend.[55] There, the trial court dismissed the complaint without leave to amend, and the plaintiff did not request leave to amend. On appeal, the court declined to consider the plaintiff's challenge to the trial court's denial of leave to amend because it was not submitted to the trial court.[56] But here, the shareholders did move to amend. While they did so without any proposed amendments or attempt to show that a successful amendment could be made, they did raise the issue in the trial court, and it is properly subject to review.
¶ 34 The shareholders contend that because the trial court did not give an explanation for its denial of leave to amend the complaint, the court abused its discretion and remand is required. The directors assert that the explanation for denying leave to amend need not be explicit so long as there is any "apparent" reason, including futility of amendment. While the cases cited by the shareholders do hold that a denial without an explanation is an abuse of discretion, those cases recognize that there may also be an apparent reason for the denial, such as futility of amendment.[57] Thus, the case law permits us to affirm without an explicit explanation for the denial in some circumstances.
¶ 35 The directors assert that the apparent reason for the denial was futility of amendment, as evidenced by the ruling dismissing the complaint for failure to state a claim. We agree. As we have held, the shareholders failed to allege any facts to support a claim for breach of the duties of loyalty or good faith, and they fail to identify any additional facts that might support such claims. They simply argue that the purported defects in their complaint actually refer to inferences that should be drawn from the facts they have pleaded. Thus, absent any other showing that they could successfully plead these claims, an amendment would be futile. Denial of the motion for leave to amend was therefore within the trial court's discretion.
¶ 36 We affirm the trial court's dismissal of the complaint and denial of leave to amend.
WE CONCUR: DWYER, LEACH, JJ.
NOTES
[1] (Alterations in original.)
[2] Loudeye ultimately sold its United States-based assets to Muze, Inc., on May 1, 2006, for $11 million. That acquisition is not challenged in this lawsuit.
[3] Cutler v. Phillips Petroleum Co., 124 Wash.2d 749, 755, 881 P.2d 216 (1994), cert. denied, 515 U.S. 1169, 115 S.Ct. 2634, 132 L.Ed.2d 873 (1995).
[4] State ex rel. Pub. Disclosure Comm'n v. 119 Vote No! Comm., 135 Wash.2d 618, 623, 957 P.2d 691 (1998).
[5] Tenore v. AT & T Wireless Servs., 136 Wash.2d 322, 330, 962 P.2d 104 (1998), cert. denied, 525 U.S. 1171, 119 S.Ct. 1096, 143 L.Ed.2d 95 (1999).
[6] Tenore, 136 Wash.2d at 330, 962 P.2d 104.
[7] Haberman v. Wash. Pub. Power Supply Sys., 109 Wash.2d 107, 120, 744 P.2d 1032, 750 P.2d 254 (1987), appeal dismissed, 488 U.S. 805, 109 S.Ct. 35, 102 L.Ed.2d 15 (1988).
[8] See Davis & Cox v. Summa Corp., 751 F.2d 1507, 1527 (9th Cir. 1985).
[9] Sinclair Oil Corp. v. Levien, 280 A.2d 717, 720 (Del. 1971).
[10] Id.
[11] Williams v. Geier, 671 A.2d 1368, 1376 (Del. 1996).
[12] In re Santa Fe Pac. Corp. S'holder Litig., 669 A.2d 59, 71 (Del. 1995).
[13] Malone v. Brincat, 722 A.2d 5, 10 (Del.1998).
[14] Del.Code. Ann. tit. 8, § 102(b)(7).
[15] Malpiede v. Townson, 780 A.2d 1075, 1095 (Del.2001).
[16] In re Lukens Inc. S'holders Litig., 757 A.2d 720, 731 (Del.Ch.1999) (citing Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 361 (Del.1993), modified, 636 A.2d 956 (Del. 1994); Paramount Commc'ns Inc. v. QVC Network Inc., 637 A.2d 34, 48 (Del. 1994)), aff'd, Walker v. Lukens, 757 A.2d 1278, 2000 WL 1152467 (Del.2000).
[17] Lukens, 757 A.2d at 731 (citation omitted).
[18] Id. (citing Smith v. Van Gorkom, 488 A.2d 858 (Del. 1985)).
[19] Malpiede, 780 A.2d at 1095.
[20] 787 A.2d 85, 91 (Del.2001).
[21] Id.
[22] Id.
[23] Id. at 91 n. 35.
[24] Lukens, 757 A.2d at 733. The shareholders also argue that Section 102(b)(7) does not require dismissal because it bars only claims for damages, whereas here they also sought injunctive relief. But because the shareholder vote and merger have already occurred, rescission is no longer an option and injunctive relief is not available. See McMillan v. Intercargo Corp., 768 A.2d 492, 500 (Del.Ch.2000); Lukens, 757 A.2d at 728.
[25] See Benihana of Tokyo, Inc. v. Benihana, Inc., 891 A.2d 150, 191-92 (Del.Ch.2005), aff'd, 906 A.2d 114 (Del.2006).
[26] In re Walt Disney Co. Derivative Litig., 906 A.2d 27, 62 (Del.2006) (emphasis omitted).
[27] In re J.P. Stevens & Co., Inc. S'holders Litig., 542 A.2d 770, 780-81 (Del.Ch.1988).
[28] Cede & Co., 634 A.2d at 361.
[29] McMillan v. Intercargo Corp., 768 A.2d 492, 504 n. 4 (Del.Ch.2000).
[30] In re Gen. Motors Class H S'holders Litig., 734 A.2d 611, 617 (Del.Ch.1999).
[31] McMillan, 768 A.2d at 504 n. 54.
[32] Id.
[33] In re Lukens Inc. S'holders Litig., 757 A.2d 720 (Del.Ch.1999), aff'd, Walker v. Lukens, 757 A.2d 1278, 2000 WL 1152467 (Del.2000).
[34] Id. at 730. The directors also cite an unpublished opinion, In re Frederick's of Hollywood, Inc., 2000 WL 130630 (Del.Ch.2000), where the court held that a duty of loyalty claim was insufficient when there was no allegation that the sole interested director dominated or controlled the board. GR 14.1(b) provides that unpublished opinions of other jurisdictions may be cited as authority "only if citation to that opinion is permitted under the law of the jurisdiction of the issuing court." The directors fail to provide Delaware authority that permits citing unpublished opinions, so we will not consider this case in our analysis.
[35] 768 A.2d 492, 506 (Del.Ch.2000).
[36] Id.
[37] Id. at 507 n. 66 (quoting In re J.P. Stevens & Co., 542 A.2d at 780-81).
[38] The complaint states: "[T]he Proxy statement mentions that `on July 26, 2006, Mr. Brochu received an unsolicited offer from a third party to acquire the capital stock of OD2,' but there is no contention in the Proxy statement that this offer was ever considered by the board of directors."
[39] See Rales v. Blasband, 634 A.2d 927, 936 (Del. 1993).
[40] See Krim v. ProNet, Inc., 744 A.2d 523, 528 n. 16 (Del.Ch.1999).
[41] See Lukens, 757 A.2d at 728-29.
[42] Brown v. MacPherson's, Inc., 86 Wash.2d 293, 297, 545 P.2d 13 (1975) ("On a CR 12(b)(6) motion, no matter outside the pleadings may be considered ... and the court in ruling on it must proceed without examining depositions and affidavits which could show precisely what, if anything, the plaintiffs could possibly present to entitle them to the relief they seek.").
[43] See Berge v. Gorton, 88 Wash.2d 756, 763, 567 P.2d 187 (1977).
[44] While no Washington case explicitly permits this, courts in the Ninth Circuit have allowed the trial court to consider such information. See, e.g., Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir.), cert. denied, 512 U.S. 1219, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994); overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir.2002); In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1405 n. 4 (9th Cir. 1996) (appropriate for trial court to consider other portions of a document referenced in a complaint in a motion to dismiss and doing so does not convert the motion into one for summary judgment), cert. denied, 520 U.S. 1103, 117 S.Ct. 1105, 137 L.Ed.2d 308 (1997). Applying this rule is logical here because the parties do not dispute the authenticity of the documents the court considered and they do not constitute testimony.
[45] ER 201(b).
[46] 768 A.2d at 501 n. 40.
[47] 780 A.2d 1075, 1092 (Del.2001).
[48] Id. at 1091-92 (footnote omitted).
[49] Id. at 1092.
[50] See RAP 2.5(a).
[51] Respondent cites State v. Henderson, 114 Wash.2d 867, 870, 792 P.2d 514 (1990); State v. Neher, 112 Wash.2d 347, 352-53, 771 P.2d 330 (1989).
[52] Tagliani v. Colwell, 10 Wash.App. 227, 233, 517 P.2d 207 (1973).
[53] Orwick v. Fox, 65 Wash.App. 71, 89, 828 P.2d 12 (citing Doyle v. Planned Parenthood of Seattle-King County, Inc., 31 Wash.App. 126, 132, 639 P.2d 240 (1982)), review denied, 120 Wash.2d 1014, 844 P.2d 435 (1992).
[54] Tagliani, 10 Wash.App. at 233, 517 P.2d 207; Walla v. Johnson, 50 Wash.App. 879, 883, 751 P.2d 334 (1988).
[55] 42 Wash.2d 460, 256 P.2d 294 (1953).
[56] Id. at 466, 256 P.2d 294.
[57] See Tagliani, 10 Wash.App. at 233, 517 P.2d 207 (noting that "`[i]n the absence of any apparent or declared reason-such as ... futility of amendment'" an outright refusal to grant leave to amend without any justifying reason "`appearing'" for the denial is an abuse of discretion) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)); Walla, 50 Wash.App. at 883, 751 P.2d 334 (abuse of discretion when trial court declined to state a reason on the record and appellate court could not ascertain whether the decision was based on untimeliness of the motion or on some other reason); Mueller v. Miller, 82 Wash.App. 236, 252, 917 P.2d 604 (1996) (citing Walla and Tagliani for proposition that denial without explanation is abuse of discretion).