IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MICHAEL D. ALLENTOFF, on behalf of himself and all others similarly situated, | No. 83576-9-I |
| Appellants, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| RED LION HOTELS CORPORATION, R. CARTER PATE, FREDERIC F. BRACE, LINDA C. COUGHLIN, TED DARNALL, JANET L. HENDRICKSON, JOSEPH B. MEGIBOW, KENNETH R. TRAMMELL, JOHN J. RUSSELL JR., and GARY KOHN, | |
| Respondents. | |

COBURN, J. — This case involves a merger between the former Red Lion Hotels Corporation (RLH) and Sonesta International Hotels Corporation (Sonesta). Shareholders of RLH filed a class action complaint alleging that RLH provided misleading financial disclosures contained in the proxy statement and later filed an amended complaint alleging the same regarding RLH's supplemental disclosures before the merger vote. Respondents filed a motion to dismiss asserting that the shareholders could not bring this action outside of an appraisal proceeding absent a showing of fraud, and the trial court granted the

Citations and pin cites are based on the Westlaw online version of the cited material

motion.  Because the shareholders did not sufficiently plead facts supporting a basis for fraud, we affirm the trial court.

FACTS

RLH was a Washington corporation primarily engaged in the franchising and ownership of hotels in the United States and Canada.  In July 2019, the RLH board of directors and members of senior management met to discuss a merger proposal from an independent party.  RLH was willing to engage in further discussions with the party, but RLH considered the purchase offer too low.  The RLH board discussed the benefits of forming a strategic transaction committee with a mandate to review, assess, and negotiate the terms of a potential transaction with the independent party with advice of advisors to make recommendations to the board.

RLH then engaged Jefferies, LLC (Jefferies) and CS Capital Advisors, LLC as RLH's financial advisors and retained merger and acquisition counsel for a potential transaction.  Over the course of a year and a half, RLH considered multiple offers from interested parties.  In November 2020, RLH considered proposals from three different entities, including Sonesta.

On January 6, 2021, RLH filed its preliminary proxy statement with the United States Securities and Exchange Commission (SEC).  The proxy statement included information about the process leading up to the merger, the board's consideration and reasons for recommending it, and the views and summary of Jefferies' underlying financial analyses concerning the merger's

price, including a discounted cash flow analysis, a selected public companies analysis, a selected transactions analysis, and a premium paid analysis.

The proxy statement contained projections that included forecasts of RLH's future revenue, EBITDA,[1] and unlevered free cash flows over a five-year period. The revenue line item included a footnote stating that it "[i]ncludes revenue from royalties of select service brands (SSB) and mid-scale and upscale Brands (USB), marketing, reservations, and reimbursables (MRR) and other franchises." The EBITDA line item included a footnote explaining,

> EBITDA represents [RLH's] revenue, less marketing, reservations and reimbursibles [sic] expense, less selling, general, administrative and other expenses, plus separation costs, plus interest and other income, plus EBITDA from licenses of its technology platform, Canvas, plus EBITDA from [RLH] operated hotels, and excludes both bad debt expense and non-cash compensation. . .

The proxy statement also notified shareholders that they had the right to dissent from the merger and instead demand payment of the fair value of their shares pursuant to Chapter 23B.13 of the Washington Business Corporation Act.

About two weeks after RLH filed the proxy statement with the SEC, but before the merger vote, shareholder Michael Allentoff filed a class action complaint on behalf of himself and all others similarly situated (the shareholders).[2] The shareholders' named defendants were RLH and individuals who during the relevant time were members of RLH's board of directors[3] and the

---

[1] Earnings before interest, taxes, depreciation, and amortization.

[2] The filing of the preliminary proxy apparently generated multiple other law suits in federal and state courts, including Delaware, New York, Colorado and Pennsylvania.

[3] The board of directors named were R. Carter Pate, Frederic F. Brace, Linda C. Coughlin, Ted Darnall, Janet L. Hendrickson, Joseph B. Megibow, and Kenneth R. Trammell.

chief executive officer (CEO).[4]  The shareholders claimed that the named individuals breached their fiduciary duties, and RLH aided and abetted the individuals in such breach in connection with the proposed sale of RLH to Sonesta.

The shareholders claimed the proxy statement failed to disclose the following: "(1) all line items underlying (i) Revenue, (ii) EBITDA, and (iii) Unlevered Free Cash Flow; (2) [RLH's] net income projections; and (3) a reconciliation of all non-GAAP to GAAP financial metrics."  RLH responded by filing supplemental disclosures with the SEC on March 9.[5]  Specifically, the supplemental disclosures expanded upon how RLH accounted for Canvas Integrated Systems (Canvas), an all-in-one cloud-based hospitality management suite, and RLH operated hotel income.  It provided a chart containing specific line items for the projected total franchise revenue, which included "Upscale Brands Royalty Fees," "Select Service Brands Royalty Fees," "Marketing, Reservations and Reimbursables (MRR) Revenue," and "Other Franchise Revenue."  The "Total Franchise Revenue" had a footnote stating that "[f]ranchise revenue forecasts do not include revenue for licenses of the Company's technology platform, Canvas, and revenue from Company operated hotels which were estimated to total $13.7[6] in 2020 in the aggregate."  The chart also included

---

[4] The CEO named was John J. Russell Jr.
[5] RLH included information about the shareholder litigation and their claims that the initial proxy was misleading.  RLH denied the allegations and maintained that the preliminary proxy complied with the law.  RLH explained that it was voluntarily filing supplemental disclosures in order to "moot plaintiffs' disclosure claims, avoid nuisance and possible expense and business delays, and provide additional information to its shareholders."
[6] $13.7 million.

4

estimates for "Core EBITDA" which included "MRR Expenses," "Selling, General, Administrative and Other Expenses," "plus: Separation Costs," "plus: Interest & Other Income," "plus: Tax Assessment." Under the Core EBITDA line, the chart included two more line items: "plus: Canvas EBITDA" and "(less) plus: Company Hotels EBITDA," which combined to be the "Total EBITDA." The supplemental disclosures also included an explanation related to two RLH properties. It noted that the financial forecasts "estimated that the disposition of RL Olympia would result in $0 net proceeds to the Company" and assumed "no sale of RL Baltimore."

On March 16, more than 92 percent of the voting shareholders approved the merger. The next day, the merger closed and the shareholders received $3.50 in cash per share, constituting an 88 percent premium to the stock's unaffected trading price.

On August 6, five months after the merger closed, the shareholders amended their complaint based on information in the supplemental disclosures and the circumstances surrounding the effectuated merger. The shareholders added another defendant, Gary Kohn, who had served as the chief financial officer, executive vice president, secretary, and treasurer of RLH. The shareholders alleged that "Kohn played a significant role in overseeing the preparation of the materially false and misleading projections that were used to justify the unfair Buyout." They claimed that respondents "knowingly undervalued [RLH] by at least $0.54 per share," resulting in an inadequate merger consideration. The shareholders also claimed that the supplemental

5

disclosures revealed that "the revenue forecasts that the [respondents] approved to value [RLH] in the Buyout did not include any revenue from licenses of [RLH's] technology platform (Canvas) or any revenue from [RLH] operated hotels" and that "these two line items of revenues excluded from the projections were estimated to total $13.7 million in aggregate in 2020 alone." The shareholders also alleged that

> [respondents] acted dishonestly and misled shareholders regarding critical facts, most notably regarding [RLH's] standalone revenue projections (and thus value) and the adequacy of the Merger Consideration in comparison. Specifically, on February 9, 2021, to convince [RLH] stockholders to vote in favor of the Buyout, [respondents] authorized the filing of a materially incomplete and misleading proxy statement (the "Proxy") with the [SEC]. The Proxy completely omitted this and other material information from shareholders. Only after [the shareholders] filed suit regarding these material nondisclosures did [respondents] finally disclose some, but not all, of these material facts to shareholders.

The shareholders claimed that "[respondents'] dishonest, bad faith conduct in orchestrating the unfair Buyout constituted a breach of their fiduciary duties owed to [RLH's] public shareholders."

Respondents filed a motion to dismiss under CR 12(b)(6), arguing that the shareholders' exclusive remedy for challenging the merger was under Washington's appraisal statute, RCW 23B.13.020.

The shareholders filed an opposition to the motion to dismiss and, as an alternative to their request for the court to deny the motion, requested leave to amend to cure any pleading deficiencies, including to amend to allege claims solely for negligence. During oral argument on the motion, the shareholders

6

made no further mention of the request for leave to amend and the court did not address the topic.

After the court heard oral argument, it later issued an order dismissing the complaint with prejudice. The court's order did not explicitly address the shareholders' alternative request for leave to amend that was in their written opposition to the motion to dismiss.

The shareholders appeal.

DISCUSSION

Standard of Review

We review a trial court's ruling to dismiss a claim under CR 12(b)(6) de novo. Kinney v. Cook, 159 Wn.2d 837, 842, 154 P.3d 206 (2007). CR 12(b)(6) provides for dismissal of a complaint if it fails to state a claim upon which relief can be granted. A dismissal for failing to state a claim upon which relief may be granted is appropriate when the plaintiff cannot prove "any set of facts which would justify recovery." Konicke v. Evergreen Emergency Servs., P.S., 16 Wn. App. 2d 131, 136-37, 480 P.3d 424 (2021) (quoting Kinney, 159 Wn.2d at 842). This court must "accept as true the allegations in a plaintiff's complaint and any reasonable inferences therein." J.S. v. Vill. Voice Media Holdings, LLC, 184 Wn.2d 95, 100, 359 P.3d 714 (2015). However, the court is not required to accept the complaint's legal conclusions as true. Rodriguez v. Loudeye Corp., 144 Wn. App. 709, 717-18, 189 P.3d 168 (2008). The court may consider documents whose contents are alleged in a complaint but not physically attached

7

to the pleadings. McAfee v. Select Portfolio Servicing, Inc., 193 Wn. App. 220, 226, 370 P.3d 25 (2016).

Appraisal Proceeding

Under the Washington Business Corporation Act, Title 23B RCW, shareholders are "entitled to dissent from, and obtain payment of the fair value of the shareholder's shares" when a corporation performs a corporate action such as a merger with another company. Eagleview Techs., Inc. v. Pikover, 192 Wn. App. 299, 307, 365 P.3d 1264 (2015) (quoting RCW 23B.13.020(1)).

"If a dissenter is dissatisfied with the corporation's estimate of the fair value of the shares, the dissenter may provide the corporation with his or her own estimate of the fair value of the dissenter's shares," and if the corporation contests the shareholder's estimate, it must file for an appraisal proceeding to determine the fair value of shares. Sound Infiniti, Inc. v. Snyder, 169 Wn.2d 199, 207, 237 P.3d 241 (2010) (citing RCW 23B.13.280(1) and RCW 23B.13.300). Dissenting shareholders cannot bring claims outside of the appraisal proceeding absent a showing of fraud:

> A shareholder entitled to dissent and obtain payment for the shareholder's shares under this chapter may not challenge the corporate action creating the shareholder's entitlement unless the action fails to comply with the procedural requirements imposed by this title, RCW 25.10.831 through 25.10.886, the articles of incorporation, or the bylaws, or is fraudulent with respect to the shareholder or the corporation.

RCW 23B.13.020(2).

The shareholders argue that the trial court improperly dismissed their complaint alleging breach of fiduciary duty because they sufficiently pleaded

8

facts showing the respondents engaged in fraud.  We disagree.  Our Supreme Court held that "the appraisal proceeding in RCW 23B.13.020 is a dissenting shareholder's exclusive remedy unless a corporate action is procedurally defective or fraudulent."  Sound Infiniti, 169 Wn.2d at 202.  A "dissenting shareholder cannot seek identical relief outside of the appraisal proceeding by merely *alleging* fraudulent conduct."  Id. at 209.  Courts must look at the actual facts of the case to determine whether the corporate action was fraudulent.  Id.

The Supreme Court previously rejected this court's interpretation that the statute limited the type of fraudulent conduct to be common law actual fraud.  Id. at 209.  Turning to legislative history of RCW 23B.13.020, the Supreme Court discussed the legislature's recognition that

> [t]he remedy is the exclusive remedy unless the transaction fails to comply with procedural requirements or is "fraudulent." ... Thus in general terms an exclusivity principle is justified. But the prospect that shareholders may be "paid off" does not justify the corporation in proceeding without complying with procedural requirements or fraudulently. If the corporation attempts an action in violation of the corporation law on voting, in violation of clauses in articles of incorporation prohibiting it, by deception of shareholders, or in violation of a fiduciary duty—to take some examples—the court's freedom to intervene should be unaffected by the presence or absence of dissenters' rights under this chapter.... [The statute] is designed to recognize and preserve the principles that have developed in the case law of Delaware, New York and other states with regard to the effect of dissenters' rights on other remedies of dissident shareholders.

Sound Infiniti, 169 Wn.2d at 208 (quoting 2 SENATE JOURNAL, 51st Leg., 2d Spec. Sess., at 3088 (Wash. 1989) (alteration in original)).  While recognizing that limiting the type of fraudulent activity to common law actual fraud is too narrow, the Supreme Court maintained that "there must still be *some* showing that the

9

corporate action itself . . . is 'fraudulent with respect to the shareholder or the corporation.'" Sound Infiniti, 169 Wn.2d at 209 (quoting RCW 23B.13.020(2)). Moreover, the Supreme Court recognized that a "charge of a violation of fiduciary duty" can be brought "within the appraisal proceeding" because the discharge of "fiduciary duty could conceivably affect the value of [the dissenter's] shares." Id. at 211.

Aside from the shareholders' conclusory statements that the respondents were "dishonest" and "misled shareholders regarding critical facts" and engaged in "bad faith conduct," the pleadings do not present facts that show fraudulent action.

Under a CR 12(b)(6) motion to dismiss, the court is to presume all the factual allegations as true. Bowman v. Two, 104 Wn.2d 181, 704 P.2d 140 (1985). However, the facts the shareholders pleaded in their own complaint contradicted their allegations. The shareholders claimed "the revenue forecasts that the [respondents] approved to value [RLH] in the Buyout did not include any revenue from licenses of the [RLH's] technology platform (Canvas) or any revenue from [RLH] operated hotels." However, in the initial proxy statement projection, the "Revenue" line item clarifies that it "[i]ncludes revenue from royalties of select service brands (SSB) and mid-scale and upscale Brands (USB), marketing, reservations and reimbursables (MRR) and other franchises." The EBITDA line item clarifies that it "represents [RLH's] *revenue*" less certain expenses, plus separation costs, interest and other income, "plus EBITDA from licenses of its technology platform, *Canvas*, plus EBITDA from [RLH] *operated*

*hotels*. . ." (emphasis added).  Not only do the shareholders rely on this proxy statement to support their complaint, the shareholders actually incorporate this portion of the proxy statement in their complaint.

The shareholders also rely on the supplemental disclosures that were released after the proxy statement as evidence that the respondents knowingly allowed RLH to be undervalued by not including certain revenue line items such as projected revenues from potential sale of hotels.  However, the very evidence that the shareholders rely on in their amended complaint to criticize the respondents for misleading them was information that was disclosed to shareholders prior to the vote on the merger proposal.

In the supplemental disclosures, RLH explained that the "Unlevered Free Cash Flow" was the total of the "Total EBITDA" less sales tax impact, net working capital increase/decrease, key money, and capital expenditures, plus "Other Cash Flow Impacts."  The disclosures clarified that in consideration of "Other Cash Flow Impacts," RLH "forecasts estimated that the disposition of RL Olympia would result in $0 net proceeds" to RLH and that RLH "forecasts assume no sale of RL Baltimore."  The shareholders disagree with how RLH chose to look at these properties, but that does not change the fact shareholders were told this information before the vote to merge occurred.

The shareholders cite cases, many of which are unpublished cases from other jurisdictions,[7] that do not involve shareholders claiming damages for

---

[7] GR 14.1(b) allows a party to cite unpublished opinions as authorities that have been issued by any court from a jurisdiction other than Washington state, only if citation to that opinion is permitted under the law of the jurisdiction of the issuing court.

undervalued shares. To the extent the shareholders rely on these cases as examples of facts that support allegations of fraud, they are distinguishable from the facts and circumstances in the instant case. See Marx v. Comput. Sci. Corp., 507 F.2d 485, 489 (9th Cir. 1974) (holding genuine issue of material fact in a claim of violation of 15 U.S.C. § 78j(b) where defendants omitted known facts that created doubt as to the company's commercial success from forecast where there was gross disparity between prediction and fact); see also Bovy v. Graham, Cohen & Wampold, 17 Wn. App. 567, 571, 564 P.2d 1175 (1977) (concluding a partner's failure to provide financial information to other partners violated fiduciary duties); W. Props., Inc. v. Barksdale, 65 Wn.2d 612, 399 P.2d 16 (1965) (determining no breach of fiduciary duty when president of corporation did not notify majority shareholders of board of directors meeting where he and his wife, the secretary-treasurer, voted that he receive a bonus on top of an extremely nominal salary); Kane v. Klos, 50 Wn.2d 778, 781, 314 P.2d 672 (1957) (concluding evidence supported fraud where corporate officer issued himself and wife 6,000 shares of voting stock without notice to the directors or stockholders for the sole purpose of controlling and dominating the company); Horowitz v. Kuehl, 117 Wash. 16, 18-19, 200 P.570 (1921) (recognizing as actionable false representations of the value of something sold when made with intent to deceive and does deceive); Berg v. Xerxes-Southdale Office Bldg. Co., 290 N.W.2d 612, 615 (Minn. 1980) (holding trial court erred finding financial statement inactionable as a matter of law because the financial statement could be actionable when the allegations of nondisclosed financial statement "could have assisted in

12

determining the accuracy of the prediction" in the financial document); <u>Polycast Tech. Corp. v. Uniroyal, Inc.</u>, 792 F. Supp. 244, 252 (S.D.N.Y. 1992) (involving the sale of a company where there was evidence of the seller's intent to deceive through inflated projections was supported by a former company employee's testimony and additional evidence about corruption of the process); <u>In re INFOUSA, Inc. S'holders Litig.</u>, 953 A.2d 963, 1001 (Del. Ch. 2007) (concluding violation of fiduciary duty where company failed to disclose that a majority shareholder stood to benefit from stock issuance).

The shareholders have not pleaded sufficient facts to show that the fraudulent exception under RCW 23B.12.020(2) applies. Their claims also fail because they only sought damages.[8] "[A]ctions for damages can be brought only within the framework of the exclusive appraisal proceeding." <u>Sound Infiniti</u>, 169 Wn.2d at 210. "'An action for damages alone will not lie, since this would allow a dissenting shareholder, by merely alleging fraudulent or unlawful corporate conduct, to seek therein the identical relief available to him in appraisal proceedings.'" <u>Id.</u> at 210-11 (quoting <u>Walter J. Schloss Assocs. v. Arkwin Industries</u>, 90 A.D.2d 149, 455 N.Y.S.2d 844, 851-52 (1982), <u>rev'd</u>, 61 N.Y.2d 700, 460 N.E.2d 1090, 472 N.Y.S.2d 605 (1984)).

As our Supreme Court observed, the "'appraisal remedy . . . *may not be adequate* in certain cases, particularly where fraud, misrepresentation, self-dealing, deliberate waste of corporate assets, or gross and palpable

---

[8] The shareholders indicated in their prayer for relief that they would be open to any "further equitable relief as [the trial] court may deem just and proper." This does not equate to the shareholders requesting a relief other than damages.

overreaching are involved.'" Sound Infiniti, 169 Wn.2d at 208-09 (emphasis added) (quoting Weinberger v. UOP, Inc., 457 A.2d 701, 714 (Del. 1983)). This case is not one of those cases. The crux of the shareholders' complaint is that they disagree with how the company was valued, and the respondents' role in allowing that to happen caused shareholders to suffer a loss by not receiving a fair value for their shares. This is the classic case the appraisal process was designed to address.

We conclude that RCW 23B.13.020 prohibits the shareholders from bringing this action outside of an appraisal proceeding and that they failed to satisfy the fraud exception to the statute.

Leave to Amend

The shareholders argue in the alternative that reversal is still warranted because the trial court erred in denying appellants' request for leave to amend the complaint. We disagree.

A trial court's decision to deny leave to amend is reviewed for an abuse of discretion. Rodriguez v. Loudeye Corp., 144 Wn. App. at 728-29. After an answer is served, CR 15(a) permits a plaintiff to amend a complaint only by leave of court, which shall be freely given when justice so requires. CR 15(a). A "failure to explain its reason for denying leave to amend *may* amount to an abuse of discretion." Rodriguez, 144 Wn. App. at 729 (emphasis added).

The shareholders do not argue how an approval of leave to amend the complaint would avoid a dismissal. Instead they argue that the trial court abused its discretion for not providing a reason why it denied the leave to amend.

We have previously considered this exact argument and concluded that the law permits us to affirm without an explicit explanation for the denial when an amendment would be futile.  Rodriguez, 144 Wn. App. at 730.  Such is the case here.  This matter was dismissed for failure to state a claim.  The shareholders simply suggest that reasonable inferences from the facts that were pleaded in the complaint are sufficient.  Because we hold that the shareholders have failed to show a fraudulent exception to the appraisal proceeding statute, then absent any other showing that the shareholders could successfully have pleaded these claims, an amendment would be futile.  The trial court did not abuse its discretion by denying leave to amend.

### CONCLUSION

Because appellants failed to plead any allegations of fraud with particularity that would permit this action to take place outside the exclusive remedy of an appraisal proceeding, we affirm.

_____
Coburn, J.

WE CONCUR:

_____          _____
Chung, J.                                                      Bowman, J.

15