

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CHETTIE MCAFEE,<br><br>Appellant,<br><br>v.<br><br>SELECT PORTFOLIO SERVICING, INC., NORTHWEST TRUSTEE SERVICES, INC., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. a/k/a MERSCORP, INC., JP MORGAN CHASE BANK, NA, WELLS FARGO BANK, NA AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF STRUCTURED ASSET MORTGAGE INVESTMENTS II INC., BEAR STEARNS MORTGAGE FUNDING TRUST 2007-AR2 MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-AR2,<br><br>Respondents. | NO. 71995-5-I<br><br>DIVISION ONE<br><br><br><br><br><br>UNPUBLISHED OPINION<br><br><br><br>FILED: March 7, 2016 |

LAU, J. — After Chettie McAfee's lender initiated nonjudicial foreclosure proceedings following McAfee's default on her mortgage loan, McAfee filed suit,

alleging violations of the deeds of trust act (DTA or act), chapter 61.24 RCW, and Consumer Protection Act (CPA), chapter 19.86 RCW, fraud and misrepresentation, and breach of contract and the covenant of good faith and fair dealing. She appeals the trial court's dismissal under CR 12(b)(6) of her complaint for damages and equitable relief against Select Portfolio Servicing Inc. (SPS), Mortgage Electronic Registration Systems Inc. (MERS), and Wells Fargo Bank, N.A. (Wells Fargo). Because the trial court considered material outside the pleadings, we review the dismissal of McAfee's claims under the summary judgment standard. Because McAfee raises no genuine issue of material fact as to any of her claims, we affirm.

## FACTS

In January 2007, Chettie McAfee borrowed $920,000 from Bear Stearns Residential Mortgage Corp. to finance the purchase of real property in Seattle, signing a promissory note and companion deed of trust. The deed of trust lists Bear Stearns as the lender, Ticor Title as the trustee, and MERS, "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns," as beneficiary. Clerk's Papers (CP) at 176-77. The deed includes a trustee's power of sale and provides that the note may be sold one or more times without prior notice to the borrower. The note was endorsed twice, first by Bear Stearns to EMC Mortgage Corporation, and then by EMC Mortgage to Wells Fargo.

2

Beginning September 1, 2009, McAfee failed to make her monthly loan payments. On June 27, 2012, MERS recorded an assignment of deed of trust, transferring its interest as beneficiary nominee to Wells Fargo. On June 28, 2012, Wells Fargo, by Northwest Trustee Services Inc. (NWTS), "its duly authorized agent," sent McAfee a notice of default. CP at 200-02. The notice identified Wells Fargo as the note owner "as Trustee for the Certificateholders of Structured Asset Mortgage Investments II Inc., Bear Stearns Mortgage Funding Trust 2007-AR2 Mortgage Pass-Through Certificates, Series 2007-AR2." CP at 202. The notice identified JPMorgan Chase Bank (Chase) as the loan servicer and included contact information for Chase and NWTS. On October 16, 2012, Wells Fargo executed a beneficiary declaration by Chase, its attorney in fact, stating that it was the holder of the note securing McAfee's loan.

On January 11, 2013, Wells Fargo recorded an appointment of NWTS as successor trustee. At some point, SPS notified McAfee in a letter that it would replace Chase as servicer of her loan, effective August 1, 2013. An SPS supervisor stated later in a declaration that from the time service was transferred, SPS was in possession of the note securing McAfee's loan.

McAfee did not cure her default, and on January 29, 2013, NWTS recorded a notice of trustee's sale. By this time, McAfee's arrearages exceeded $200,000. The notice set a sale for May 31, 2013. The sale was postponed four times, to September 27, 2013.

On September 3, 2013, McAfee filed a complaint for damages and a motion to restrain the trustee's sale. The complaint named SPS, NWTS, MERS, Chase, and Wells Fargo as defendants and alleged violations of the CPA, the DTA, common law fraud, misrepresentation, breach of contract, and breach of the covenant of good faith and fair dealing.

On September 24, 2013, the trial court granted a temporary order restraining the sale. The court's order directed McAfee to deposit $4,569.24 into the court registry every month beginning October 1, 2013, and to "provide all proof of a valid offer of a trial loan modification from Defendants." CP at 141.

On October 8, all defendants filed a "declaration of non-compliance with temporary restraining order," which stated that McAfee had made no deposit into the court registry. CP at 135-36. The declaration also noted that while McAfee had provided letters from EMC Mortgage Corp. documenting a forbearance payment agreement, she had failed to provide the court with any documents related to a loan modification.

In November, NWTS moved for summary judgment dismissal. SPS, MERS, Wells Fargo, and Chase moved for dismissal under CR 12(b)(6).

On December 11, 2013, McAfee and NWTS stipulated to dismissal of the action without prejudice as to NTWS. Two days later, the trial court granted Chase's motion to dismiss with prejudice, and the parties later stipulated under CR 54(b) to the entry of partial final judgment dismissing all claims against Chase.

4

On January 8, 2014, NWTS recorded another notice of trustee's sale, setting a sale for May 9, 2014. The sale occurred as scheduled.

On May 21, 2014, the court entered an order dismissing McAfee's claims against SPS, MERS, and Wells Fargo. McAfee timely appealed.

McAfee moved for a stay of the subsequent unlawful detainer action and on October 22, 2014, the court granted the motion pending appeal.

ANALYSIS

We review a trial court's ruling on a motion to dismiss under CR 12(b)(6) de novo, as a question of law. FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc., 180 Wn.2d 954, 962, 331 P.3d 29 (2014). A CR 12(b)(6) motion challenges the legal sufficiency of the allegations in a complaint. Contreras v. Crown Zellerbach Corp., 88 Wn.2d 735, 742, 565 P.2d 1173 (1977).

Either party may submit documents not included in the original complaint for the court to consider in evaluating a CR 12(b)(6) motion. Bavand v. OneWest Bank, FSB, 176 Wn. App. 475, 485, 309 P.3d 636 (2013); Rodriguez v. Loudeye Corp., 144 Wn. App. 709, 726, 189 P.3d 168 (2008). Such submissions generally convert a CR 12(b)(6) motion into a motion for summary judgment. Bavand, 176 Wn. App. at 485. However, in a motion to dismiss, the trial court may take judicial notice of public documents if their authenticity cannot reasonably be contested, and the court may also consider documents whose contents are alleged in a complaint but not physically attached to the pleadings. Rodriguez, 144 Wn. App. at 725-26.

Here, SPS, MERS, and Wells Fargo supported their motion to dismiss with a request for judicial notice of McAfee's note and the notice of default. The hearing record and court's orders show that the court considered these materials but do not indicate if the court took judicial notice of them. In its May 21, 2014, order granting SPS's motion to dismiss, the trial court stated that in addition to the pleadings and the defendant's request for judicial notice, it considered the defendant's declaration of SPS supervisor Rebecca Adelman. The court also stated in this order and the order dismissing Chase that it "reviewed the files and records of this case." CP at 344, 421. Accordingly, we review the challenged orders under the summary judgment standard. Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. As in the case of review of an order under CR 12(b)(6), this court reviews an order on summary judgment de novo. Michael v. Mosquera-Lacy, 165 Wn.2d 595, 601, 200 P.3d 695 (2009).

Foreclosure Under the Deeds of Trust Act

The DTA creates a three-party transaction, in which a borrower conveys the mortgaged property to a trustee, who holds the property in trust for the lender as security for the borrower's loan. Bain v. Metro. Mortg. Grp., Inc., 175 Wn.2d 83, 92-93, 285 P.3d 34 (2012); Albice v. Premier Mortg. Servs. of Wash., Inc., 174 Wn.2d 560, 567, 276 P.3d 1277 (2012). If a borrower defaults, a lender may nonjudicially foreclose by a trustee's sale. Bain, 175 Wn.2d at 93; Albice, 174 Wn.2d at 567. The act furthers three goals: (1) an efficient and inexpensive

6

foreclosure process, (2) adequate opportunity for interested parties to prevent wrongful foreclosure, and (3) stability of land titles. Albice, 174 Wn.2d at 567 (citing Cox v. Helenius, 103 Wn.2d 383, 387, 693 P.2d 683 (1985)). Because the DTA eliminates many of the protections afforded borrowers under judicial foreclosures, "lenders must strictly comply with the statutes and courts must strictly construe the statutes in the borrower's favor." Albice, 174 Wn.2d at 567 (citing Udall v. T.D. Escrow Servs., Inc., 159 Wn.2d 903, 915-16, 154 P.3d 882 (2007); Koegel v. Prudential Mut. Sav. Bank, 51 Wn. App. 108, 111-12, 752 P.2d 385 (1988)). A trustee has a duty of good faith to all parties and "is not merely an agent for the lender or the lender's successors." RCW 61.24.010(4); Bain, 175 Wn.2d at 93.

The DTA describes the steps a trustee must take to start a nonjudicial foreclosure. A beneficiary or trustee must transmit a written notice of default to the borrower at least 30 days before a notice of sale is recorded. Among other requirements, a trustee may not schedule a sale before confirming that the beneficiary of the obligation holds the note and thus has authority to enforce the obligation. A trustee may rely on "a party's undisputed declaration submitted under penalty of perjury that it is the holder of the note." Brown v. Wash. State Dep't of Commerce, 184 Wn.2d 509, 544, 359 P.3d 771 (2015); RCW 61.24.030(7)(a), (b). A successor trustee is not vested with the powers of the original trustee until the beneficiary's appointment of the successor trustee is

recorded with the auditor of the county where the property is located. RCW 61.24.010(2); Bavand, 176 Wn. App. at 487.

Deeds of Trust Act Claims

McAfee claims that the notice of default she received was invalid "because Wells Fargo Bank as Trustee for SAMI 2007-AR2 is not the true beneficiary because it only became the alleged beneficiary by an assignment from MERS who was not the beneficiary and therefore not lawfully entitled to make the assignment." Br. of Appellant at 19. We disagree.

Washington courts have long recognized that a security instrument follows the note it secures. Deutsche Bank Nat'l Tr. Co. v. Slotke, No. 73631-1-I, 2016 WL 107783, at *5 (Wash. Ct. App. Jan. 11, 2016) (collecting cases). The deed that McAfee executed states that MERS acts "solely as a nominee for Lender and Lender's successors and assigns." CP at 177, 178. The note was eventually endorsed to Wells Fargo, which subsequently received the deed of trust via MERS's assignment as lender's nominee. Thus, the record does not support McAfee's claim in her complaint that MERS "wrongfully claimed to be a beneficiary under the deed of trust." McAfee raises no genuine issue of material fact supporting an allegation that MERS's assignment of the deed to Wells Fargo was unlawful or ineffective under the DTA. And Wells Fargo, as beneficiary, had authority to issue a notice of default. McAfee's claim fails.

In her complaint and brief on appeal, McAfee makes two additional erroneous claims: (1) MERS executed the appointment of NWTS as successor

8

trustee and (2) NWTS issued the notice of default. MERS did not execute the appointment of successor trustee. As nominee for Bear Stearns, MERS conveyed its interest in the deed of trust to Wells Fargo, which later appointed NWTS. And contrary to McAfee's allegation, in issuing the notice of default, NWTS acted as beneficiary Wells Fargo's "duly authorized agent," not as successor trustee. This did not violate the act. See Bain, 175 Wn.2d at 106 ("[N]othing in this opinion should be construed to suggest an agent cannot represent the holder of a note").

By the time NWTS recorded the first notice of trustee's sale on January 29, 2013, Wells Fargo had recorded the appointment of successor trustee naming NWTS, in compliance with RCW 61.24.010(2). McAfee does not raise any genuine issue of material fact supporting her DTA claims.

Consumer Protection Act Claims

McAfee also contends that the defendants violated the CPA. To prevail on an action for damages under the CPA, the plaintiff must establish (1) an unfair or deceptive act or practice (2) caused by the defendant (3) occurring in trade or commerce (4) which impacted the public interest (5) and caused injury to the plaintiff in his or her business or property. Hangman Ridge Training Stables Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986). Failing to satisfy any of the five elements is fatal to a CPA claim. Hangman Ridge, 105 Wn.2d at 793.

9

McAfee alleges "a pattern and practice of unfair and unlawful servicing and foreclosure activities that ultimately resulted in premature default and in unfair, deceptive, and unlawful foreclosure proceedings." Br. of Appellant at 14. She contends the respondents prevented her from seeking a loan modification, in violation of the federal Home Affordable Modification Program (HAMP).[1] She also alleges that the unlawful assignment of the deed of trust and appointment of successor trustee were unfair and deceptive acts, analogizing to this court's decision in Walker v. Quality Loan Serv. Corp. of Washington Inc., 176 Wn. App. 294, 308 P.3d 716 (2013). None of these contentions has merit.

Under Washington law, characterization of MERS as beneficiary on the deed of trust "is not itself an actionable injury." Bain, 175 Wn.2d at 120. Nor does Walker support McAfee's claims. In Walker, a party acting as "the Beneficiary" recorded an appointment of successor trustee to start foreclosure proceedings more than a month before it received its beneficiary interest via assignment by MERS. This court noted that "when an unlawful beneficiary appoints a successor trustee, the putative trustee lacks the legal authority to record and serve a notice of trustee's sale." Walker, 176 Wn. App. at 306. Thus, Walker pleaded facts sufficient to show violations of both the DTA and the CPA. Walker, 176 Wn. App. at 313, 320.

---

[1] HAMP, which offers financial incentives to mortgage lenders to modify the home loans of borrowers in danger of foreclosure, was created under the Emergency Economic Stabilization Act of 2008. 12 U.S.C. § 5201; CitiMortgage, Inc. v. Bermudez, 2014 ILL. App. (1st) 122824, 6 N.E.3d 268, 271 n.2, 379 Ill. Dec. 191.

Here, facts the trial court considered show that Wells Fargo established its rights as holder of the note before appointing a successor trustee and beginning foreclosure proceedings. Although she alleges in her complaint that dismissed defendant NWTS and Wells Fargo "wrongfully caused to be sent, [under the CPA], notices of default and debt collection letters" that they "knew or should have known" were "unfair and deceptive," she does not dispute the fact or amount of her default. Nor does she identify procedural violations of the DTA that could support any claim under either the DTA or CPA.

In her complaint, McAfee directly accuses only Chase of using unfair and deceptive practices in the loan modification and short sale process, alleging that Wells Fargo and Bear Stearns "acted in an unfair and deceptive manner in colluding with and ratifying the acts of NWTS, Chase, and SPS." CP at 8. On appeal, she appears to replace dismissed party Chase with Wells Fargo. She analogizes to Corvello v. Wells Fargo Bank, N.A., 728 F.3d 878 (9th Cir. 2013) to argue that the "[r]espondents unfairly and deceptively . . . attempted to thwart every attempt by [a]ppellant to protect her interests in her home by seeking a loan modification." Br. of Appellant at 15.

But Corvello does not support McAfee's argument. In Corvello, the lender refused to offer a permanent loan modification to borrowers who had successfully complied with a trial payment program. Thus, the lender violated contractual obligations it had assumed under HAMP. Corvello, 728 F.3d at 883-84. Here, McAfee does not allege she was ever offered a trial payment program, or that

11

she successfully fulfilled the terms of the forbearance agreement to qualify for a modification, or that any respondent violated contractual obligations, such as the court found in Corvello. To the extent that she alleges that any respondent improperly denied her a loan modification under HAMP, McAfee's claim fails as a matter of law because courts have consistently held that HAMP does not create a private right of action. See, e.g., Wigod v. Wells Fargo Bank, NA, 673 F.3d 547, 555 (7th Cir. 2012); Miller v. Chase Home Fin., LLC, 677 F.3d 1113, 1116 (11th Cir. 2012); Brosius v. Wells Fargo Bank, NA, No. 13-10109, 2014 WL 2199627, at *8 (E.D. Mich. May 27, 2014) (court order) (collecting cases). Because McAfee does not raise a genuine issue of material fact related to an unfair or deceptive practice, her CPA claims fail.

Fraud and Misrepresentation Claims

McAfee contends that Wells Fargo and MERS committed fraud in the assignment of the deed, and that MERS fraudulently executed an appointment of successor trustee. These claims fail.

Under Washington law, a plaintiff claiming fraud must establish a number of elements, and must plead the fraud claim with particularity. Elcon Const., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 166, 273 P.3d 965 (2012); CR 9(b). A plaintiff alleging negligent[2] misrepresentation must similarly prove falsity, as well as reasonable reliance, causation, and damages, by clear, cogent, and convincing

_____

[2] McAfee does not specify whether she is pleading negligent or intentional misrepresentation.

12

evidence. Shepard v. Holmes, 185 Wn. App. 730, 742 n.2, 345 P.3d 786 (2014); Ross v. Kirner, 162 Wn.2d 493, 499, 172 P.3d 701 (2007).

As explained, MERS was authorized as the lender's nominee to assign the deed to Wells Fargo, which held the note. Following that assignment, beneficiary Wells Fargo, not MERS, appointed a successor trustee. These transactions complied with the terms of RCW 61.24.010(2) and the deed of trust.

In her complaint, McAfee makes general statements about the defendants' "collusion," "material misrepresentations," and "fraudulent actions." CP at 10. But "these conclusory assertions and general complaints do not provide the who, what, when, where, and how of a properly pleaded fraud claim." Wilson v. Bank of Am., NA, No. C13-1567RSL, 2014 WL 841527, at *4 (W.D. Wash. Mar. 4, 2014) (court order). Contrary to her arguments, McAfee does not identify "material representations that are false" on the recorded documents she identifies. Br. of Appellant at 24. And she points to no specific fraudulent or misleading information provided to her by Wells Fargo or SPS related to any loan modification or short sale. Accordingly, she does not state facts supporting her fraud claims with sufficient particularity. Nor does she raise any genuine issue of material fact that would support a claim for either fraud or misrepresentation.

Breach of Contract Claims

Finally, McAfee contends that respondents breached the contract and the covenant of good faith and fair dealing. McAfee appears to base this contention mainly on the erroneous assertion that MERS "was a fraudulent party on the

Deed of Trust." CP at 11. McAfee also claims that the respondents were "less than honest and did not exhibit lawfulness of purpose" and "engaged in subterfuge and delay in hopes of ultimately foreclosing on the property." Br. of Appellant at 26, 27. These claims fail.

McAfee does not dispute that she received the benefit of her bargain when she received the proceeds from her loan, nor that she has continued to live in the home for nearly seven years after defaulting on her mortgage. And she does not point to any specific contract term that any of the respondents breached or performed in bad faith. To the extent that she argues that respondents had a duty to help her modify the terms of her loan, she identifies no contract term supporting the existence of such a duty, and HAMP itself authorizes no private right of action. She produced no proof of a trial payment plan or loan modification offer, contrary to the terms of the trial court's restraining order. Because the duty of good faith and fair dealing is not "free-floating" but "exists only in relation to performance of a specific contract term," these claims also fail. Badgett v. Sec. State Bank, 116 Wn.2d 563, 570, 807 P.2d 356 (1991). She raises no genuine issue of material fact supporting a claim for breach of contract or the covenant of good faith and fair dealing.

## CONCLUSION

Because McAfee raises no genuine issue of material fact that would support claims for DTA or CPA violations, fraud, misrepresentation, or breach of contract, the trial court did not err by dismissing her complaint. We affirm.

Jau, J.

WE CONCUR:

Leach, J.

Becker, J.