# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| SAUK-SUIATTLE INDIAN TRIBE, on its own behalf and as representative of the class of persons deceived by unfair or deceptive trade acts or practices of defendant, | No. 83632-3-I |
| Appellant, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| CITY OF SEATTLE, | |
| Respondent. | |

MANN, J. — The Sauk-Suiattle Indian Tribe (Tribe) sued the City of Seattle over the City's hydroelectric project on the Skagit River. The Tribe claimed that the City's promotional campaign alleging that the hydroelectric project produced "green" power was deceptive and violated the Consumer Protection Act (CPA), chapter 19.86 RCW. The Tribe also claimed that the City's actions created a private and public nuisance interfering with the Tribe's use and enjoyment of its property right to fish on the Skagit River. The Tribe appeals the trial court's decision dismissing its complaint under CR 12(b)(6) for failing to state a claim for relief.

No. 83632-3-I/2

We affirm dismissal of the Tribe's claims under the CPA and its claim for nuisance per se. We reverse and remand for further proceedings on the Tribe's public and private nuisance claims.

I.

The City, through Seattle City Light, owns and operates the 711 megawatt Skagit River Hydroelectric Project (Skagit project). The Skagit project consists of three large hydroelectric dams (Gorge, Diablo, and Ross) on the main stem of the Skagit River.[1] The Skagit project was constructed beginning in or about 1917.

In 1927, the Federal Energy Regulatory Commission's (FERC) predecessor, the Federal Power Commission, licensed the Skagit project for 50 years. In 1995, FERC issued a new license authorizing the City's operation of the Skagit project for another 30 years. The 1995 license expires in 2025. FERC has already begun the relicensing process.

According to the Tribe, the Skagit project blocks approximately 37 percent of the Skagit River to upstream and downstream fish passage. There are no fish passage facilities at the Skagit project, unlike virtually every other hydroelectric operator in the Pacific Northwest.

In 2003, the City applied for and was granted certification for the Skagit project from the Low Impact Hydropower Institute (LIHI), a federal 501(c)(3) nonprofit organization.[2] LIHI is the principal "green power" certifying agency in the United States. LIHI certification affords hydroelectric operators immense economic and other benefits,

---

[1] The facts are derived largely from the Tribe's first amended complaint. Because this matter is before us on a motion to dismiss under CR 12(b)(6), we assume the truth of the allegations in the complaint. Haberman v. Wash. Pub. Power Supply Sys., 109 Wn.2d 107, 120, 744 P.2d 1032 (1987).

[2] 26 U.S. Code § 501(c)(3).

No. 83632-3-I/3

including significant public trust and confidence in the environmental values and ethos of the hydroelectric operator. Upon approval by LIHI, the Skagit project became the largest LIHI low impact certified hydroelectric project in the nation. LIHI low impact certification for the Skagit project was renewed in 2017.

Since receiving its LIHI low impact certification, the City has publicly communicated and advertised an extensive level of environmental claims about the Skagit project. The City has adopted its brand and public slogan as the "Nation's Greenest Utility." The City displays logos and claims to that effect on websites, materials, and presentations intended for marketing and public consumption. For example, the City's "powerlines blog" contains logos stating, "Green Power to the People," and "City Light is the Nation's Greenest Utility."

The Tribe is a federally recognized Indian Tribe whose homeland is within the Skagit River Basin. The Tribe consists of tribal citizens who rely on cultural and natural resources within the Skagit River ecosystem. The Tribe has hunted and fished in the Skagit River Basin as the basis for its economy and culture for at least 8,000 years — since Time Immemorial.

In September 2021, the Tribe sued the City in King County Superior Court over the City's claims about the Skagit project. The Tribe amended its complaint in November 2021. The amended complaint sought declaratory and injunctive relief and alleged violations of the CPA and private and public nuisance. The amended complaint sought class certification on behalf of Tribe members.

No. 83632-3-I/4

The City moved to dismiss the amended complaint under CR 12(b)(6) for failing to state a claim for relief.[3]  After briefing and oral argument, the trial court granted the City's motion and dismissed the Tribe's amended complaint with prejudice.

The Tribe appeals.

II.

We review a trial court's dismissal for failure to state a claim under CR 12(b)(6) de novo.  Wash. Trucking Ass'n v. Emp't Sec. Dep't, 188 Wn.2d 198, 207, 393 P.3d 761 (2017).  "A CR 12(b)(6) motion challenges the legal sufficiency of the allegations in a complaint."  McAfee v. Select Portfolio Servicing, Inc., 193 Wn. App. 220, 226, 370 P.3d 25 (2016).  Granting a motion to dismiss is "appropriate only when it appears beyond doubt that the plaintiff cannot prove any set of facts that would justify recovery."  Wash. Trucking, 188 Wn.2d at 207.  The facts alleged in the complaint are presumed true, however, the court need not accept the legal conclusions as true.  Haberman v. Wash. Pub. Power Supply Sys., 109 Wn.2d 107, 120, 744 P.2d 1032 (1987).[4]

A.

The Tribe argues that the City's statements about the Skagit project amount to "greenwashing" in violation of Washington's CPA.  The City responds that, as a municipality, it is not subject to the CPA.  We agree with the City.

The CPA declares that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful.  RCW

---

[3] The City moved to dismiss the Tribe's initial complaint but withdrew that motion after the Tribe filed its amended complaint.

[4] The City also moved to dismiss for lack of subject matter jurisdiction under CR 12(b)(1) claiming any challenges to the City's FERC license were preempted by federal law.  Because the trial court dismissed all the claims under CR 12(b)(6), we do not address the City's claim under CR 12(b)(1).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 83632-3-I/5

19.86.020. The CPA provides for a private right of action allowing "any person" injured in their business or property by a violation of the act to bring a civil action for damages and injunctive relief. RCW 19.86.090; Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 784, 719 P.2d 531 (1986). The CPA defines "person" to include "natural persons, corporations, trusts, unincorporated associations, and partnerships." RCW 19.86.010.

In Wash. Nat. Gas Co. v. Pub. Util. Dist. No. 1 of Snohomish County, 77 Wn.2d 94, 97, 459 P.2d 633 (1969), our Supreme Court held that a public utility district, which is a municipal corporation, was not subject to the CPA because municipal corporations were "exempt . . . from the operation but not the benefits of the [CPA]." In reasoning, the court explained that "[b]y its very terms, that act, RCW 19.86, includes only natural persons, corporations, trusts, unincorporated associations and partnerships." RCW 19.86.010; Wash. Nat. Gas, 77 Wn.2d at 98 (internal quotations omitted). The language does not imply that municipal corporations or political subdivisions are within the definition of persons and entities subject to the CPA. Wash. Nat. Gas, 77 Wn.2d at 98. The Supreme Court reiterated this holding in Haberman, where it concluded that because irrigation districts were municipal corporations they were exempt from the CPA. 109 Wn.2d at 170-71 (citing Wash. Nat. Gas, 77 Wn.2d at 98).[5]

---

[5] The Tribe argues that we should ignore Wash. Nat. Gas. and Haberman based on RCW 19.86.920, which instructs courts construing the CPA be guided by final decisions of federal courts construing federal laws governing restraint of trade and unfair competition. The Tribe contends that because federal courts construing the similar federal Sherman and Clayton Acts have held that "persons" includes municipal corporations, we should also. Because our Supreme Court has at least twice confirmed that the plain language of RCW 19.86.010 exempts municipal corporations, we decline the Tribe's invitation.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 83632-3-I/6

Because the City, as a municipal corporation, is exempt from the CPA the trial court did not err in dismissing the Tribe's CPA claims.

B.

The Tribe argues next that the trial court erred by dismissing its nuisance claims. We agree in part.

A nuisance in Washington is defined broadly by statute:

Nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others, offends decency, or unlawfully interferes with, obstructs or tends to obstruct, or render dangerous for passage, any lake or navigable river, bay, stream, canal or basin, or any public park, square, street or highway; or in any way renders other persons insecure in life, or in the use of property.

RCW 7.48.120.  Despite this broad definition, "generally, an activity is a nuisance only when it 'interferes unreasonably with other persons' use and enjoyment of their property.'"  Moore v. Steve's Outboard Serv., 182 Wn.2d 151, 155, 339 P.3d 169 (2014) (quoting Tiegs v. Watts, 135 Wn.2d 1, 13, 954 P.2d 877 (1998)).

1.

The Tribe argues that the trial court erred in dismissing its claim for nuisance per se.  We disagree.

A nuisance per se "is an act, thing, omission, or use of property which of itself is a nuisance, and hence is not permissible or excusable under any circumstance."  Tiegs, 135 Wn.2d at 13.  A nuisance per se can be established by citing a statute that prohibits conduct at all times and under all circumstances.  Moore, 182 Wn.2d at 156-57.

The Tribe argues that the City's conduct violates RCW 9.04.010, which makes false advertising a crime:

-6-

No. 83632-3-I/7

> Any person, firm, corporation or association who, <u>with intent to sell or in any wise dispose of</u> merchandise, securities, <u>service</u>, or anything offered by such person, firm, corporation or association, directly or indirectly, to the public for sale or distribution, or <u>with intent to increase the consumption thereof</u>, or to induce the public in any manner to enter into any obligation relating thereto, or to acquire title thereto, or an interest therein, makes, publishes, disseminates, circulates, or places before the public, or causes, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public in this state, in a newspaper or other publication, or in the form of a book, notice, hand-bill, poster, bill, circular, pamphlet, or letter, or in any other way, an <u>advertisement of any sort</u> regarding merchandise, securities, service, or anything so offered to the public, which advertisement contains any assertion, representation or statement of fact <u>which is untrue, deceptive or misleading</u>, shall be guilty of a misdemeanor.

RCW 9.04.010 (emphasis added). In essence, and most relevant here, RCW 9.04.010 makes it to illegal to advertise using untrue, deceptive, or misleading statements, with intent to sell or increase consumption of a service.

Certainly the Tribe's amended complaint makes many allegations that the City's environmental claims—statements about being the "Nation's Greenest Utility," and claims that it has improved the conditions of the Skagit anadromous species—are untrue, deceptive, or false. We assume the Tribe's allegations are true. Even so, the Tribe's amended complaint fails to allege or explain how the City is using these statements with an intent to either sell more power or increase the consumption of power. Instead, we agree with the trial court that the City's claims appear to be "mere puffery." General, subjective, unverifiable claims about a product or service are "mere puffery" and cannot give rise to a false advertising claim. See <u>Newcal Indus., Inc. v. Ikon Office Sols.</u>, 513 F.3d 1038 (9th Cir. 2008).

The trial court did not err in dismissing the Tribe's nuisance per se claim.

2.

No. 83632-3-I/8

An ordinary private nuisance action requires the plaintiff to show that the defendant's conduct caused substantial and unreasonable interference with the plaintiff's property interest. Moore, 182 Wn.2d at 156-57; Tiegs, 135 Wn.2d at 13-14. A public nuisance requires either a violation of one of the statutorily enumerated public nuisances in RCW 7.48.140, or for the plaintiff to show that the nuisance activity "affects equally the rights of an entire community or neighborhood, although the extent of the damage may be unequal." Kitsap County v. Kev, Inc., 106 Wn.2d 135, 139, 720 P.2d 818 (1986); RCW 7.48.130.

The Tribe argues that the trial court erred in dismissing its nuisance claims under CR 12(b)(6) because it failed to allege that the City's actions were the proximate cause of the Tribe's harm. We agree.

The Tribe argues that when clear factual allegations are made, proximate causation is a matter for the jury. Bernethy v. Walt Failor's Inc., 97 Wn.2d 929, 935, 653 P.2d 280 (1982). We agree that whether the element of proximate causation is satisfied is generally a question for the jury. But in reviewing a dismissal under CR 12(b)(6), we must determine whether the Tribe sufficiently alleged proximate causation in its complaint based on the presumption that the alleged facts are true.

In its complaint, the Tribe alleged:

2.41    Seattle's misrepresentation of the state of Skagit anadromous species while concurrently taking credit for non-existent improvement has wrongfully shifted blame from Seattle to the Plaintiff and other Skagit Treaty Tribes, who, despite catching a mere handful of salmon and steelhead pursuant to the Treaty each year due to Skagit anadromous species' degraded condition, are, due to the resultant public misperception of the causes of species decline, frequently the target of public ire, harassment, and vandalism. As such, Seattle's "greenwashing", by wrongfully transferring culpability for anadromous species degradation

-8-

No. 83632-3-I/9

onto the Plaintiff and its members, directly interferes with the right to quiet enjoyment of Plaintiff's Treaty-grounded property right in the lands and waters of the Skagit, and harms the Plaintiff community.

The Tribe explained that the harm is not limited to animus from local persons, but also that its brand and reputation associated with the fishery resource is broadly connected to public perception and reputation of the Skagit for sustainable fisheries:

2.35    Plaintiff Sauk-Suiattle Indian Tribe participates in commercial fishery, as well as hunting and gathering in the Skagit ecosystem, with its tribal reputation and brand inherently connected to public perception and reputation of the health, environmental responsibility and sustainability of the Skagit ecosystem, including the viability of its species and the management of the river system by major actors such as Defendant Seattle.

And the Tribe explained that the conduct was both a private and public nuisance:

3.8     Defendant Seattle's actions set forth herein constitute an unreasonable interference with the comfortable enjoyment of Plaintiff's rights in property, land and waters, causing harm to Plaintiff.

3.11    Defendant Seattle's actions set forth herein constitute an unreasonable interference with the rights of a community, special harm arising from which injures the Plaintiff and its constituent members.

The Tribe is arguing that the City's greenwashing statements undermine the Tribe's valuable property interest in the fishery resources and their right to its quiet enjoyment by misrepresentations that cause animus in the form of harassment, and diminished support of the Tribe through public opinion.[6]  While it is true that proximate cause can be severed by the intervening acts of third parties, that is a factual question not fit for dismissal under CR 12(b)(6).  The Tribe sufficiently alleged a causal connection between the City's statements and its own harm.  Assuming the facts

---

[6] The City disputes that the Tribe has a property interest in fishing on the Skagit River.  We are reviewing dismissal of the Tribe's complaint under CR 12(b)(6) and therefore assume that the Tribe's claim of a property right is true.

-9-

No. 83632-3-I/10

alleged in the complaint are true, the Tribe sufficiently alleged a claim for private and public nuisance.

We reverse and remand for further proceedings on the Tribe's public and private nuisance claims. We otherwise affirm.

_____ Mann, J. _____

WE CONCUR:

_____ Bowman, J        _____ Dwyer, J.