IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| KURT HERZOG, on his own behalf and on behalf of similarly situated others,<br><br>Appellant,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN OF WASHINGTION; KAISER FOUNDATION HEALTH PLAN OF WASHINGTION OPTIONS, INC.,<br><br>Respondent. | No. 87256-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — Kurt Herzog's doctor diagnosed him as suffering from obesity. His doctor prescribed Victoza (liraglutide) as medically necessary. Herzog's insurer denied coverage of the drug because his plan uniformly excludes any drug treatment for obesity. On behalf of a putative class, Herzog sued Kaiser Foundation Health Plan of Washington and Kaiser Foundation Health Plan of Washington Optics, Inc. (collectively "Kaiser"). He claims Kaiser violated the Washington Law Against Discrimination, chapter 49.60 RCW, and the Consumer Protection Act, chapter 19.86 RCW. The trial court dismissed the claims because, as a matter of law, insurance regulation WAC 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 authorized the exclusion. This court rejected this exact argument in Simonton

*v. HCA*, No. 86988-4-I, slip op. at 4-11 (Wash. Ct. App. May 4, 2026).[1] We reverse and remand.

FACTS

Because this case comes to us following a CR 12(b)(6) dismissal, the following facts alleged in the complaint are presumed true. Wash. Trucking Associations v. State Emp't Sec. Dep't, 188 Wn.2d 198, 207, 393 P.3d 761 (2017). A doctor diagnosed Kurt Herzog as suffering from obesity. His doctor prescribed Victoza (liraglutide), a prescription weight loss drug as medically necessary.

Obesity is a physiological medical condition characterized by excessive fat tissue that affects one's endocrine, cardiovascular, and musculoskeletal systems. Additionally, obesity involves numerous pathophysiological processes, including changes in cellular, hormonal, neurochemical, and organ levels. Therefore, it is a disease that can cause concurrent changes in the body. For example, obesity neurochemically causes inflammation within appetite control centers in the hypothalamus, decreasing the body's ability to signal hunger and satiety, and making it more challenging to decrease food intake. Notably, obesity is different from being overweight because the latter means having more body weight than is considered normal for an individual's age and height which is not, by itself, a disease.

Herzog's health insurance provider, Kaiser Foundation Health Plan of Washington, denied coverage of Victoza (liraglutide), an FDA approved treatment for obesity. Herzog's health insurance plan states that, for "Obesity Related Surgical

---

[1] Oral argument for the instant case, Simonton, and Solorio v. Regence Blueshield, No. 87362-8-I were heard on the same day before the same panel.

Services", bariatric surgery and services related to obesity screening and counseling are covered. In its exclusions section for obesity related surgical services it includes:

> Obesity treatment and treatment for morbid obesity for any reason including any medical services, drugs, supplies, regardless of co-morbidities, except as described above; specialty treatment programs such as weight control self-help programs or memberships, such as Weight Watchers, Jenny Craig or other such programs; medications and related physician visits for medication monitoring.

In denying Herzog's request for coverage, his insurer explained that Victoza (liraglutide) is only covered if the insured "meet[s] medical necessity criteria (have a given disease, condition, illness, or injury and/or tried and failed certain medications). The information available to us did not show that you are being treated for a covered diagnosis of type 2 diabetes with additional criteria." Additionally, Herzog's insurer clarified that he is using Victoza (liraglutide) for weight loss and "[m]edications used for weight loss are not covered on your Kaiser Permanente Plan." Subsequently, Herzog's insurer included preferred alternative prescription drug options for Herzog to discuss with a provider, such as topiramate, bupropion, and naltrexone, as well as over the counter medication, Alli. Herzog appealed his insurer's decision declining coverage, which was again denied.

On March 20, 2024, on behalf of a putative class, Herzog sued Kaiser, alleging that its benefit design violated RCW 48.43.0128 and constituted a discriminatory act under the Washington Law Against Discrimination (WLAD), RCW 49.60.030(1)(e), as well as a violation of the Consumer Protection Act (CPA). Herzog claims that Kaiser discriminates against the disabled—people who have been diagnosed as suffering from obesity—by denying prescribed medications that are medically necessary to treat their

diagnosed health condition. Under the WLAD, obesity is a recognized disability. Taylor v. Burlington N. R.R. Holdings, Inc., 193 Wn.2d 611, 615, 444 P.3d 606 (2019).

Kaiser moved to dismiss Herzog's lawsuit under CR 12(b)(6), arguing that, as a matter of law, Herzog cannot assert a WLAD claim because what is permitted under insurance regulation WAC 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 and RCW 48.43.0128 could not be considered an unfair practice under the WLAD. RCW 48.43.0128(2) allows health plan carriers to utilize reasonable medical management techniques. According to the Office of the Insurance Commissioner's (OIC) promulgated rules, a health benefit plan may, but is not required to, include services for obesity or weight reduction or control in its essential health benefit (EHB) benchmark plan. WAC 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(1)(b)(viii). The trial court granted Kaiser's motion and dismissed Herzog's complaint.

Herzog appeals.

DISCUSSION

Standard of Review

We review de novo an order granting a motion to dismiss under CR 12(b)(6). FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc., 180 Wn.2d 954, 962, 331 P.3d 29 (2014). A CR 12(b)(6) motion challenges the legal sufficiency of the allegations in the complaint. McAfee v. Select Portfolio Servicing, Inc., 193 Wn. App. 220, 226, 370 P.3d 25 (2016). A court may dismiss a petitioner's claim under CR 12(b)(6) for "failure to state a claim upon which relief can be granted." The rule "weeds out complaints where, even if what the plaintiff alleges is true, the law does not provide a remedy." McCurry v. Chevy Chase Bank, FSB, 169 Wn.2d 96, 102, 233 P.3d 861 (2010). "Dismissal under CR 12(b)(6) is appropriate in those cases where the plaintiff

cannot prove any set of facts consistent with the complaint that would entitle the plaintiff to relief." Jackson v. Quality Loan Serv. Corp., 186 Wn. App. 838, 843, 347 P.3d 487 (2015). In considering a motion to dismiss under CR 12(b)(6), we take all facts alleged in the complaint as true. FutureSelect Portfolio Mgmt., Inc., 180 Wn.2d at 962. Though we may consider hypothetical facts, "'[i]f a plaintiff's claim remains legally insufficient even under his or her proffered hypothetical facts, dismissal pursuant to CR 12(b)(6) is appropriate.'" Id. at 963 (alteration in original) (quoting Gorman v. Garlock, Inc., 155 Wn.2d 198, 215, 118 P.3d 311 (2005)). We must determine whether the plaintiff can prove any set of facts consistent with their complaint that would entitle them to relief. Orwick v. City of Seattle, 103 Wn.2d 249, 254, 692 P.2d 793 (1984).

Discrimination in Insurance

Kaiser argues that WAC 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 authorizes them to exclude services to treat obesity, such as prescription weight loss drugs. Section 5642 states, "A health benefit plan may, but is not required to, include … as part of the EHB-benchmark package … Obesity or weight reduction or control," WAC 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(1)(b)(viii), and says the same of "Weight loss drugs," WAC 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(6)(b)(ii). In response, Herzog alleges that section 5642 does not govern nondiscrimination compliance requirements and has a narrow purpose of establishing benefit minimums.

We considered this very issue in Simonton, No. 86988-4-I, slip op. at 4-11, and concluded that the purpose of section 5642 has more to do with concerns about determining a plan's actuarial value than establishing an exception to WLAD that prohibits discrimination based on physical disability. We held that the WLAD and the insurance code, under Title 48 RCW, with limited exceptions, bar discrimination in

insurance. Id. at 4.

As explained in Simonton, the insurance code, Title 48 RCW, states in relevant part that, notwithstanding any provision contained in Title 48 RCW to the contrary, "The amount of benefits payable, or any term, rate, condition, or type of coverage may not … be restricted, modified, excluded, or reduced on the basis of the presence of any disability of the insured or prospective insured." Id. at 4-5 (citing RCW 48.30.300(1)). The WLAD guarantees "[t]he right to be free from discrimination" based on, among other statuses, "the presence of any sensory, mental, or physical disability," and this includes "[t]he right to engage in insurance transactions." Id. at 4 (citing RCW 49.60.030(1)(e)). The WLAD, however, allows "fair discrimination" unless it is prohibited under RCW 48.43.0128, which specifically applies to health insurance. Simonton, No. 86988-4-I, slip op. at 5.

Under RCW 48.43.0128, a covered health carrier may not "[i]n its benefit design or implementation of its benefit design, discriminate against individuals because of their … present or predicted disability." Id. at 6 (citing RCW 48.43.0128(1)(a)). "The nondiscrimination statute allows excluding coverage for services to treat a disability for an undefined range of valid reasons, for instance because they are experimental, not effective, or not cost-effective (among other reasons), but it prohibits excluding coverage for services simply because they are to treat that disability." Simonton, No. 86988-4-I, slip op. at 7-8. "To do so would discriminate 'because of' that disability." Id. at 8. This does not mean that a health plan carrier cannot use medical management techniques or must cover a service that is not medically necessary. Id. at 6-7 (citing RCW 48.43.0128(2), (5)). As a result, the Legislature required the OIC to adopt the

6

rules necessary to implement RCW 48.43.0128(1) and (2) consistent with the Patient Protection and Affordable Care Act (ACA). Id. at 5-6 (citing RCW 48.43.0128). Accordingly, the ACA is a starting point to understand RCW 48.43.0128 and OIC's rules that implement that statute. Simonton, No. 86988-4-I, slip op. at 5.

The ACA requires health care benefit providers to consider disabled peoples' needs and not discriminate against them. Id. at 6 (citing Schmitt v. Kaiser Found. Health Plan of Wash., 965 F.3d 945, 955 (9th Cir. 2020)). Therefore, health insurance providers must provide coverage consistent with a Secretary of Health and Human Services defined EHBs package. Id. at 8-9 (citing 42 U.S.C. § 18022(b)(1)(A)-(J)). An insurer that provides EHBs must offer benefits that are "substantially equal" to an "EHB-benchmark" plan. Id. at 9 (citing 45 C.F.R. § 156.115(a)(1)). When a state selects a base-benchmark plan, it can be updated to meet ACA standards. Id. (citing 45 C.F.R. § 156.100, .100(b)). "The OIC first established the Washington benchmark plan in regulations adopted in 2013." Id. (citing WSR 13-15-025).

Under WAC 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(1), the commissioner defined two EHB categories applicable to the instant case, "[a]mbulatory patient services" and "[p]rescription drugs" as well as the "items and services" within those categories. See id. The OIC also adopted a nondiscrimination provision in health plan design under WAC 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 which states, in relevant part, that "[a]n issuer offering a plan … may not … [d]esign plan benefits, or implement its plan benefits, in a manner that results in discrimination against individuals because of their … present or predicted disability." WAC 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(1)(a).

Under "[a]mbulatory patient services," EHB-benchmark plans may cover "obesity

or weight reduction or control" other than nutritional counseling and obesity-related services that the U.S. Preventative Services Task Force for prevention and chronic care has issued recommendations on. Simonton, No. 86988-4-I, slip op. at 10 (citing WAC 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(1)(b)(viii)). Additionally, under the "prescription drug services" category an EHB-benchmark plan may cover "Weight loss drugs." See id. (citing WAC 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(6)(b)(ii)). When an EHB-benchmark plan covers nonrequired benefits, it is not allowed to include those benefits in establishing the actuarial value for that category. Id. (citing WAC 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(1)(b); (6)(b)).

Upon examination of section 5642, its aim is to "determin[e] a plan's actuarial value." Id. (citing WAC 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(1)). Generally, section 5642 states the benefits that a plan must include, specifies which benefits a plan may include, then explains that the latter benefits cannot be included when determining a plan's actuarial value. Id.

This interpretation of section 5642 is consistent with the ACA's goal of providing coverage for EHBs. Id. at 11. Specifically, federal law allows states to prohibit benefit substitution "within the same EHB category," 45 C.F.R. § 156.115(b)(2), consistent with WAC 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(1)(b) and (6)(b). Id. Moreover, section 5642 is harmonious "with the principle that a plan must 'provide coverage that is substantially equal to the EHB-benchmark plan,' where 'substantially equal' requires that each EHB category be a meaningful health benefit and deliver value substantially equal to the EHB-benchmark plan both in the aggregate and category-by-category." Id. (citing WAC 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(1)(a)-(b)). Therefore, section 5642 ensures that EHBs coverage is not reduced without reducing the plan's actuarial value and categorization under the ACA because when a plan covers a non-mandatory benefit, such as obesity treatment, it does not

contribute to the actuarial value. Id.

"But these background purposes do not support that section 5642 also means that a plan providing minimum benefits is not discriminatory." Id. In Simonton, we analyzed the ACA and held that, "compliance with federal and state law regarding essential health benefits did not guarantee compliance with the ACA's nondiscrimination requirement." Id. (citing Schmitt, 965 F.3d at 956). "The nondiscrimination requirement of RCW 48.43.0128 must be met independently of compliance with the essential health benefits mandates of section 5642." Id.

The WLAD codifies discrimination of any act in violation of RCW 49.60.030(1), which expressly states that this civil right includes, but is not limited to, the right to engage in insurance transactions. Id. at at 17-18 (citing RCW 49.60.030(1)(e)). Under the WLAD, unlawful practices under RCW 48.30.300 include when an entity in the business of insurance in this state restricts or excludes coverage based on the presence of any disability of the insured. Id. at 4-5 (citing RCW 48.30.300(1)).

We explained in Simonton:

Excluding coverage for supported clinical or cost-benefit reasons, among others, is not unlawfully discriminatory. RCW 48.43.0128(2), (5). There could be "a reasonable, nondiscriminatory reason" for the exclusion for prescription drugs for obesity, and even if [Herzog] were to prevail and the exclusion had to be limited to the extent it is discriminatory, the plan could still use exclusions "based on nondiscriminatory standards" such as excluding "treatment that is experimental or has a high cost-to-benefit ratio" based on the efficacy of the treatment and its cost at the time the benefit plan became effective. Schmitt, 965 F.3d at 958.

Id. at 20. In the instant case, it is undisputed that, with the exception of bariatric surgery and services related to obesity screening and counseling, Herzog's health plan excludes obesity treatment, including drugs for obesity treatment and treatment for

9

morbid obesity for any reason.[2]

## CONCLUSION

The trial court erred in concluding that, as a matter of law, Herzog has failed to state a claim upon which relief can be granted. Because Kaiser based its motion to dismiss the CPA claim for the same basis, we reverse and remand.

Cohen, J.

WE CONCUR:

Birk, J.                    Mann, J.

---

[2] To the extent Kaiser, in passing, disputes Herzog's factual assertions, they are not relevant in a CR 12(b)(6) dismissal where we presume all facts asserted in the complaint are true.