IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JOE W. TRIMM and ANDRE RODNEY, Derivatively on Behalf of STARBUCKS CORPORATION,<br><br>                    Respondents,<br><br>          v.<br><br>SARA KELLY, DENNIS BROCKMAN, HOWARD SCHULTZ, MELLODY HOBSON, RICHARD E. ALLISON, JR., ANDREW CAMPION, JORGEN VIG KNUDSTORP, SATYA NADELLA, KEVIN R. JOHNSON, ISABEL GE MAHE, CLARA SHIH, JOSHUA COOPER RAMO, JAVIER G. TERUEL, MARY N. DILLON, and STARBUCKS CORPORATION, a Washington Corporation,<br><br>                    Petitioners. | No. 86734-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

DÍAZ, J. — Joe W. Trimm and Andre Rodney (hereafter, respondents) filed a stockholder derivative complaint against Starbucks Corporation (Starbucks) and various officers and members of its board of directors (hereafter, petitioners). Respondents alleged the petitioners breached their fiduciary duty of loyalty to the company and its stockholders by failing to oversee the company's labor management practices. A commissioner of this court granted discretionary review

after the superior court denied petitoners' motion to dismiss the complaint under CR 23.1. We reverse the trial court's order and direct it to dismiss the case, without prejudice, for respondents' failure to make a pre-suit demand on Starbucks' board or showing it would have been futile.

## I.  BACKGROUND

In a November 2023 amended complaint, respondents derivatively sued 14 officers and members of Starbucks' board of directors as well as the corporation, as a nominal defendant. Respondents claimed that, from 2019 to 2023, the petitioners breached their fiduciary duty of loyalty by "utterly failing" to implement any oversight and reporting system concerning Starbucks's labor management and by failing to abide by the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151-169.

Starbucks moved to dismiss the complaint under CR 23.1 and the individually named petitioners also moved to dismiss under CR 12(b)(6). In May 2024, the trial court denied both motions. This court then granted the petitioners' motion for discretionary review.

## II.  ANALYSIS

Petitioners assert that the trial court erred in denying their motion to dismiss because respondents did not make a pre-suit demand on the Starbucks board and failed to establish demand futility, as required by CR 23.1 and RCW 23B.07.400(2). We agree.

The Washington Superior Court rule governing derivative actions by shareholders states that a complaint "shall . . . allege with particularity the efforts,

2

if any, made by the plaintiff to obtain the action the plaintiff desires . . . and the reasons for the plaintiff's failure to obtain the action or for not making the effort." CR 23.1.

Likewise, the Washington statute setting the procedure for derivative proceedings states that a complaint brought in such a suit "must . . . allege with particularity the demand made, if any, to obtain action by the board of directors and either that the demand was refused or ignored or why a demand was not made." RCW 23B.07.400(2).

And under Washington common law, courts have long held that plaintiffs are exempt from making such a showing—i.e., of exhausting internal recourse— only if they "can 'clearly show that a demand for corporate action would have been useless.'" See In re F5 Networks, Inc., Derivative Litig., 166 Wn.2d 229, 236-37, 207 P.3d 433 (2009) (internal quotation marks omitted) (quoting Williams v. Erie Mountain Consol. Mining Co., 47 Wash. 360, 363, 91 P. 1091 (1907)).

Our Supreme Court has explained that Washington follows Delaware law in explicating this standard. Id. at 240. Adopting what is known as "demand futility," the Court explained that courts must look to whether a complaint includes particularized factual allegations which create a reasonable doubt that a board of directors could not have properly exercised its independent and disinterested business judgment in responding to a demand. Id. at 237.

Under applicable Delaware law, "the universal test for assessing whether [a] demand should be excused as futile" is to evaluate the allegations in the complaint "on a director-by-director basis" by asking the "following three

3

questions":

> (i) whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand;

> (ii) whether the director faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand; and

> (iii) whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand.

United Food & Com. Workers Union & Participating Food Indus. Emps. TriState Pension Fund v. Zuckerberg, 262 A.3d 1034, 1058-59 (Del. 2021). "If the answer to any of the questions is 'yes' for at least half of the members of the demand board, then demand is excused as futile." Id. at 1059.

In considering prong (ii)—whether a substantial likelihood of liability exists, courts must also consider statutes which authorize "corporations to adopt a charter provision insulating directors from liability for breaching their duty." Id. at 1050-54.

Here, in their amended complaint, respondents acknowledge they did not make a pre-suit demand on the board, but claim, in conclusory fashion, that doing so would have been futile because the board faced a substantial likelihood of liability "for their actions and inactions pertaining to the claims that form the basis of the Demand." In other words, respondents demand futility argument is based only on prong (ii).[1]

---

[1] In another part of the complaint, respondents flatly allege that "a majority of current Starbucks directors . . . face a substantial likelihood of liability." But to support that claim—as to a majority of the directors—it simply notes that it was charging six of the board's eight directors and it does not otherwise reference

4

Here also, Washington's legislature enacted RCW 23B.08.320, which states that a corporation's articles of incorporation may eliminate or limit a director's personal liability for their conduct as a director, provided that their charter "shall *not* eliminate or limit the liability of a director for acts or omissions that involve *intentional* misconduct by a director or a *knowing* violation of law by a director[.]" (emphasis added). And, consistent with this statute, Starbucks' charter exculpates its directors against claims by shareholders through the following provision:

> To the full extent that the Washington Business Corporation Act, as it exists on the date hereof or may hereafter be amended, permits the limitation or elimination of the liability of directors, a director of the corporation shall not be liable to the corporation or its shareholders for monetary damages for his or her acts or omissions as a director.

This court has held a corporation's adoption of such a liability-limiting provision within its charter may be "applied to defeat a substantive claim" of breach by corporate directors, in a motion to dismiss. Rodriguez v. Loudeye Corp., 144 Wn. App. 709, 720, 189 P.3d 168 (2008).

As a result, respondents must allege with particularity that a majority of the directors faced a substantial likelihood of liability because those directors engaged in "intentional misconduct" or "a knowing violation of law" or face dismissal. As petitioners rightly argue, the complaint nowhere pleads such intention or knowing wrongdoing at all, let alone with particularity, so the respondents were not exempt from making a pre-suit demand on the board.

Similarly, in United Food, defendant Facebook had a "broad" exculpatory

---

particular board members in detailing its allegations.

provision and there were no allegations made with particularity that a majority of the board "committed a *non-exculpated* breach of their fiduciary duty." 262 A.3d at 1060. Thus, this failure to so plead "eliminate[d] the possibility that demand could be excused under the second prong of the demand-futility test, as none of the remaining four directors would face a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand." Id.

Respondents respond—not by pointing to any specific allegation in the complaint related to the petitioners intentional or knowing actions[2]—but by claiming "[a]ll available precedent under Washington law" supports that the directors on the board did face a substantial likelihood of liability. However, respondents cite to only two cases, which are both distinguishable or fail to support that their complaint adequately raised allegations the directors faced a substantial likelihood of liability.

Respondents claim Senn v. N.W. Underwriters, Inc. supports their argument the directors faced a likelihood of liability. 74 Wn. App. 408, 414, 875 P.2d 637

---

[2] When given the opportunity to identify where in their complaint plaintiffs made allegations of petitioners' intentional and knowing misconduct, respondents pointed this court to a "combination" of "three buckets" of allegations; namely, the company's statements in its SEC filings "acknowledging the risk" of a lack of oversight, a failure to produce documents showing the board asserting such oversight, and non-substantive meetings on labor relations. Wash. Ct. of Appeals oral argument, Trimm v. Kelly, No. 86734-2-I, (Oct. 29, 2025), at 10 min., 44 sec. through 13 min., 41 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2025101173/?eventID=2025101173. We hold that, even taking these generalized statements as true as we must, these statements facially do not allege particular actions by particular members of the board showing intentional misconduct or a knowing violation of the law, let alone such behavior by a majority of individual members. There is, indeed, no allegation of any particular action by any individual board member petitioner.

(1994). Respondents cite it for the broad proposition that all directors have "an affirmative duty to be aware of the affairs of the companies they serve[.]" They claim Senn "clearly and unequivocally pronounced a duty applicable to officers and directors of Washington corporations generally." We disagree that Senn supports their position, for three reasons.

First, the court in Senn addressed a duty imposed on a type of director in a particular type of industry, specifically "under either the insurance code or similar provisions of RCW 23A.08 and 23B.08." 74 Wn. App. at 414-15. These provisions—which require directors of insurance organizations to discharge their duties "in good faith, and with that diligence, care and skill which ordinary prudent [people] would exercise under similar circumstances"—differ from the statutory provisions in this case. Id. (quoting RCW 48.05.370). Here, plaintiff's claims are based on a distinct statute governing derivative suits.

Second, the court in Senn relied on a non-Delaware, out-of-state case describing a director's fiduciary duty of diligence, care, and skill. 74 Wn. App. at 415 (citing Francis v. United Jersey Bank, 87 N.J. 15, 432 A.2d 814 (1981)). As described by this court, the New Jersey Supreme Court there had concluded that ignorance of a business's affairs "does not excuse a director from liability *for his or her colleagues' fraud or malfeasance.*" 74 Wn. App. at 416 (emphasis added). In turn, this court held that the defendant insurance company officer breached her fiduciary duty under RCW 48.05.370, despite her claim of ignorance, by failing to be sufficiently involved or properly familiarizing herself with the business where another director had improperly converted funds. Id. at 417. In great contrast

here, respondents claim the directors breached their fiduciary duty of loyalty, pursuant to a different statute, and with no claims of fraud or malfeasance by any party. See Chappel v. Johnson, 35 Wn. App. 2d 479, 576 P.3d 578 (2025) (noting the petitioners in Senn had committed "blatant" fraud, and reiterating the case is consistent with Washington law which exempts corporate officers from liability unless, inter alia, they *knowingly* commit or condone wrongful conduct).

Third, even if Senn's holding were applicable here, in order for the respondents to be excused from making a pre-suit demand on the board, they had to allege more than the directors "remain[ed] ignorant of what [their] duty entails" or "of the affairs of a business." 74 Wn. App. at 416. Again, respondents were required to allege particularized "intentional misconduct" or "a knowing violation of law." RCW 23B.08.320. Their allegations do not reach that standard.

Respondents otherwise cite to a federal order which held that a director's intentional or knowing breach of duty was not shielded from liability by RCW 23B.08.320. (Citing Grassmueck v. Barnett, 281 F. Supp. 2d 1227, 1233 (W.D. Wash. 2003)). But reiterating that legal rule does not help respondents to prevail without showing their complaint actually pled such a breach.

In fact, the court in Grassmueck specifically held that, "[w]hile the Petitioners maintain that Plaintiff has not sufficiently pled that the Directors acted intentionally or knowingly, paragraphs 20 and 21 of the Complaint *use those very words* with respect to the Petitioners' actions or inactions." 281 F. Supp. 2d at 1233 (emphasis added). The same is not true here.

On appeal, respondents appear to claim that their complaint accused the

directors of intentional misconduct by alleging a "knowing, bad faith, or intentional failure to remain informed of the affairs of a corporation" company's affairs." But their complaint simply does not include even such generalized allegations, let alone allegations, e.g., that a majority of particular directors were aware of legal obligations as to their oversight which they then intentionally or knowingly ignored.[3]

To the contrary, the complaint actually details facts which reflect that the directors *did* attempt to be informed of labor management issues.[4] And, the complaint acknowledges the directors received relevant information at three board or committee meetings in 2022.[5] Id.

---

[3] What's more, respondents expressly disclaimed that their complaint alleged the board willfully ignored obvious misconduct in a way that they "consciously failed to monitor or oversee" Starbucks' operations. See Br. of Pet'r at 43; Rep. of Proc. at 43 (asserting that opposing counsel "makes this argument that we were . . . trying to . . . [claim] that the board, in fact, had knowledge that the company was potentially violating the law and stuck its head in the sand. They didn't do anything, right? That's not what we're claiming at all. Our complaint says nothing about that.") (emphasis added). To the extent the respondents now assert the complaint does make such a claim, it has been waived. See, e.g., City of Auburn v. Hedlund, 137 Wn. App. 494, 504 n.20, 155 P.3d 149 (2007).

[4] The complaint includes at least the following, half-a-dozen acknowledged facts: (1) the board had three committees whose charters stated that their responsibilities included oversight on labor matters, (2) corporate annual reports detailed an employee survey process designed to share information with Starbucks' highest management levels, (3) in response to concerns over employee unionization at a March 2023 annual general meeting, a board-member explained it had initiated a "human rights impact assessment" to be conducted by a third party with expertise on the right to collective bargaining, (4) at a June 2022 board meeting, the directors received legal advice concerning union and labor relations issues, (5) at a September 2022 committee meeting, members of the board received a presentation and discussed plans to address employee concerns and labor unionization activity and its impact on the company, and (6) at a September 2022 meeting, the board also discussed labor issues, a system for tracking employee sentiment, and ways to potentially improve that system.

[5] In support of their contention the directors still breached their fiduciary duties

In summary, the two cases respondents rely on do not support their claim that their complaint sufficed to allege a majority of the board faced a substantial likelihood of liability in light of the exculpation provision in Starbucks' corporate charter. Because the complaint did not raise particularized factual allegations of knowing or intentional misconduct by a majority of directors, they did not show it would have been futile to make a pre-suit demand on the board, so they were not excused from making one. Therefore, respondents did not satisfy the pleading requirements of CR 23.1 and RCW 23B.07.400(2), and the court erred in denying petitioners' motion to dismiss for this procedural reason.[6]

### III.    CONCLUSION

We reverse the order of the trial court denying petitioners' motion, and direct the court to dismiss the case without prejudice.[7]

Díaz, J.

WE CONCUR:

_____

---

notwithstanding these meetings, the only support respondents offer are overgeneralized paraphrases of holdings or case law based in distinguishable, comparatively extreme facts.

[6] We do not reach the question—as a matter of first impression—whether Washington courts should consider "Caremark claims" recognized by Delaware law. In re Caremark Int'l Inc. Derivative Litig., 698 A.2d 959, 961 (Del. Ch. 1996).

[7] Finally, we repeat that the court must dismiss the matter, not on the merits of any possible labor violations, but without prejudice as respondents will remain free to bring another lawsuit after complying with CR 23.1 and the related statutes reviewed above.

10